UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

JACKSON DIVISION

CASE NO.: 1:23-cv-001143

PUCKETT ET., AL.

PLAINTIFFS

V.

JABBAR ET., AL

DEFENDANTS

**RECEIVED**

SEP - 8 2023

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Jackson

---

## OPPOSITION AND MEMORANDUM TO DEFENDANT STEPHEN MILBRATH'S MOTION TO DISMISS THE COMPLAINT

Plaintiff's Carl and Marcella Puckett "Pro-Se, hereby oppose the Defendant's MIlbrath's Motion to dismiss the complaint pursuant to F.R.C.P. 12 (b)(2)(6) and oppose the false statements upon which Defendant Milbrath intentionally asserts in in support of his motion.

### DISPUTED FACTUAL BACKGROUND

Plaintiff was never sued and has never been named in any case in the Southern District of Florida as stated by RICO Defendant Milbrath in his Motion to dismiss the Plaintiff's complaint (Page 1-2) before this court . The RICO, acting on

1

behalf of RICO defendant,  AIn Jeem, Inc did attempt to begin its operation in the Florida Southern District through an abuse of the judicial process, and immediately after filing their scheme, it was denied by the Honorable Judge Moreno before any alleged defendant victims were served or a summons issued (APPENDIX A, Exhibit 6). RICO defendant Milbrath attached a declaration from that case to a motion he filed in the Florida Middle District court on behalf of a co-defendant victim case 8:21cv01331 (Appendix D, Exhibit 2). RICO defendant Milbrath knew the RICO was operating 2 concurrent actions in the Florida Middle District Court, where he was appearing, which also contained the exact same declarations (Exhibit 3). Rico Defendant Milbrath knew the RICO client Ain Jeem, Inc had no legal standing from the first instance in the case that was denied by the Florida Southern District Court. Rico defendant Milbrath did not refer to the exact same declarations in the concurrent open cases in the Middle District which had not been dismissed , to prevent the risk of a negative impact on the furtherance of the RICO, and conspired with the RICO firm to violate the rights of Plaintiff's and others through acts of concealment and fraudulent misrepresentation of rights and the law and did so in furtherance of the RICO. In addition to the conspiracy to deny right, RICO defendant Milbrath conspired to commit and continue the fraud in the underlying RICO operation. RICO defendant Milbrath, an attorney, knew the law that when a Plaintiff lacks standing and therefore also subject matter jurisdiction, that a dismissal as to one defendant requires a dismissal as to all (*see **Because our***

*analysis of standing applies equally to federal defendants, we affirm the dismissal as to all defendants for West's lack of standing without considering personal jurisdiction. See Parsi v. Daioleslam 778 F.3d 116, 126 (D.C. Cir. 2015).*

The RICO scheme however, was that the defendant victims would either pay the RICO firm and its client to release their business they unlawfully held hostage or pay for representation by one of the RICO defendant attorneys named in Plaintiff's complaint, who had knowledge of the scheme and were active participants in the RICO. When the Puckett Plaintiff's immediately brought forth the same argument as to RICO defendant Ain Jeem Inc. as a plaintiff, lack of standing and lack of subject matter jurisdiction on 7/14/21 in the RICO scheme, it went ignored as if there was no filing at all (Appendix B, Exhibit 27).

The Puckett's did make first contact with RICO defendant Milbrath on July 22nd, 2021 (Exhibit 1). Aceeliplaw claims to be a digital office and practices in the new digital world, including cryptocurrencies and e-commerce, and represents clients in all federal courts (Exhibit1). Rico defendant Milbraths websites acelliplaw.com installed cookies into the plaintiff's Computer, a computer that is located in this district of Tennessee and leaving a physical digital footprint where the cookie, svSession, remains for 1 year 1 month and 4 days establishing continuous and systematic contact (Exhibit 1). After sending out their answer and motion they had filed pro-per while still seeking counsel, on July 22nd, 2021, RICO defendant Milbrath replied that Puckett's had **"done a pretty good job"**

regarding their motion  (Exhibit 4), (which he is now claiming in his own motion

before this court was part of a history of serial and abusive filings which he knows

is false). As RICO defendant Milbrath stated in his email reply to the Pucketts, if

the Pucketts could get their accounts unfrozen and pay a retainer he would be

happy to help (Exhibit 4).  Before Puckett Plaintiff's could reply to RICO

defendant Milbrath's email they received another email just six minutes later from

defendant Milbrath offering representation because he was able to get his other

client dismissed (Exhibit 5).The Pucketts however wanted to recover the damages

to which they were entitled under 15 U.S.C. 1116 (d)(11) for the wrongful seizure

of their confidential business records and trade secrets which were not placed in

the custody of the court as required by 15 U.S.C. 1116 (D)(7) and now being

misappropriated by the RICO firm defendants. The Pucketts responded that the

answer they had to file pro-se also contains a counterclaim for the damages caused

(Exhibit 6). RICO defendant Milbrath responded denying the Puckettts could get

anything but maybe attorneys fees for the RICO firms filing of a baseless lawsuit

intentionally concealing their entitlement to damages under 15 U.S.C. 1116 (D)(11)

for fourth amendment rights violations and damages from wrongful seizure which

RICO defendant was aware of the statute being used as he had just attached the

RICO firms declaration in support of the ex parte TRO pursuant to that statute as

an exhibit to his motion on behalf of his former client (Exhibit 7, Exhibit 2). The

Pucketts were appalled and considered this intentional fraudulent concealment

none of the so-called defense attorneys were raising the issues of fraud , wrongful seizure and fourth amendment violations, while acknowledging in their motions the RICO defendant Ain Jeem, Inc had no legal standing and the court was without proper jurisdiction (Exhibit 3), and therefore declined RICO defendant Milbraths offer of representation. At this point the Pucketts were still unaware that all the RICO attorneys were operating in violation of the Madrid Protocol Treaty to which the US is a signed member as explained in their complaint, and that these RICO defendants were completely aware that the corrupt judges were acting without complete court jurisdiction in the get rich quick scheme RICO.

On August 10th, 2023 the Pucketts began to discover the fraud of RICO defendant Axencis and notified the RICO firm and related attorneys including Rico defendant Milbrath (Exhibit 8). RICO defendant Milbrath immediately responded on August 10, 2023 "Keep up the good work" (Exhibit 9). RICO defendant Milbrath through his digital office (Exhibit 1) and digital practice placing cookies on the Puckett's computer here in Tennessee and his continuous and systematic contact with the Puckett's is evidence of his availment to the court's jurisdiction over him in this case. In addition to addressing the attorney misconduct in a filing on 7/22/21, On August 10, 2022 the Pucketts served a RICO notice upon RICO defendant Milbrath and other RICO defendants named in this action, and received no response (Exhibit 10).

## MEMORANDUM OF POINTS AND AUTHORITIES

Federal Rule of Civil Procedure (FRCP) 4(k)(1)(C) allows personal jurisdiction over a defendant "when authorized by a federal statute. RICO's "Venue and Process" provision (18 U.S. § 1965(a)-(d)) provides for nationwide jurisdiction for certain defendants in RICO actions. In *Laurel Gardens, LLC v. McKenna*, the US Court of Appeals for the Third Circuit, in a case of first impression, held that when a civil Racketeer Influenced and Corrupt Organizations Act (RICO) action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants (3rd Cir. Jan. 14, 2020). Most courts have interpreted 18 U.S.C. section 1965(b) to confer nationwide jurisdiction in a RICO action over nonresident defendants if the plaintiff can establish personal jurisdiction over at least one defendant under section 1965(a). *See Rolls-Royce Corp. v. Heros, Inc.,* 576 F.Supp.2d 765, 778-79 (N.D. Tex. 2008) (citing cases); *Oblio Telecom, Inc. v. Patel,* No. 3-08-CV-0279-L, 2008 WL 4936488 at *4 (N.D. Tex. Nov. 18, 2008) (citing cases).  If the RICO plaintiff can show that at least one defendant transacts his affairs" in the forum, then jurisdiction is proper as to all other defendants if "the ends of justice require." *Rolls-Royce,* 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.,* 401 F.Supp.2d 712, 718 (W.D. Tex. 2005). Rather than having to

6

show the connection with the forum state, due process in such cases is satisfied if

the nonresident defendant has sufficient minimum contacts with the United States.

*See Busch,* 11 F.3d at 1258; Rolls-Royce, 576 F.Supp.2d at 782.The Third Circuit

Joining the Second, Seventh, Ninth, Tenth, and D.C. Circuits, the Third Circuit

found that subsection (b) applies, allowing nationwide jurisdiction in a particular

district over RICO defendants residing in other districts.

**ARGUMENT I**

This Court has personal jurisdiction over **RICO defendant Etsy.** Etsy is

incorporated in the foreign country of Ireland and maintains its headquarters that is

physically domiciled in Brooklyn, New York. Etsy is an E-commerce marketplace

and not an E-commerce platform as was falsely portrayed in the RICO activities of

the RICO defendants in their operation in the middle district of Florida, as was

detailed in the Plaintiff's complaint. Online marketplaces are owned and operated

by a certain organization or company. This means the marketplace operator is

responsible for operating, maintaining, and facilitating any onsite activity including

advertising and promoting. All of these tasks serve their goal of providing an e-

commerce forum for third-party sellers and buyers. An e-commerce marketplace

such as Esty requires its sellers to follow a set of regulations written in the rule

7

book because its principal place of business is digital throughout its sellers

including within this district of Tennessee. Unlike Amazon marketplace, Etsy does

not maintain its own products or warehouses and is entirely dependent upon the

revenue of its third party sellers. The regulations usually cover product restrictions,

performance requirements, and fee structures such as charges such as listing

upgrades or renewals, shipping label printings, transaction fees, listing fees,

subscription fees, payment processing fees and more  based on the marketplace

itself. Since sellers are third-party contributors, they cannot interfere with the

customer journey, experience, selling metrics, and many other aspects and sellers

have little to no access to the marketplace customers. Many consumers who

purchase on marketplaces assume they are buying from that Marketplace i.e., Etsy,

Inc.) even though they are purchasing the third party seller's products. Therefore,

the buyers tend to remember the marketplace Marketplace vs Platform - What Are

The Differences? [Aug 2023 ] (litcommerce.com). Etsy is also not a payment

processor as was falsely portrayed by the RICO defendants in their RICO activity

in the middle district of Florida against the Plaintiff's as set forth in their

complaint. Etsy instead is a payment aggregator in that Etsy offers consumers

various payment options by way of Esty's third party payment processors of

payments into its own banking institution then after a period of time 1-7 days, and

after deducting shipping label fees, listing fees, transaction fees. Sales tax,

subscription fees and more it issues a "settlement" to its post transaction

merchants. As a payment aggregator that issues "settlements" to its post transaction

merchants, the IRS requires Etsy who maintains confidential social security

numbers and other sensitive confidential information, to issue the 1099 K form to

its post transaction merchants www.irs.gov . Etsy also became a registered sales

tax vendor for the State of Tennessee including this district as of 10/01/2020. Etsy,

as an e-commerce marketplace and not a free range  e-commerce platform and its

activities in this state and in this district are substantial, continuous, and systematic.

Etsy regulates over 184 5 star rated post transaction merchants in the state of

Tennessee, 32 of which are domiciled within the western district of the court

(Exhibit 11).

Plaintiffs believe the stats would multiply time 3 at least for the non 5 star rated

post transaction merchants over which Etsy regulates within this State and within

this district. Etsy offers its own revolving charge account called Etsy payments to

its buyers and creates continuing obligations of the resident buyers in this forum.

Etsy created its own app and installs cookies on both buyers and sellers in this

State and within this district creating a physical footprint presence. (Exhibit 12).

Etsy, Inc. conspired to be complicit with the Fraud asserted by the RICO that the

third party sellers had complete control of Etsy's seller ID URL and then further

conspired with the RICO to exercise Etsy's sole control it was complicit in denial

of, in removing the third party seller id url as part of the unlawful seizure action

against the Plaintiff store physically domiciled within this district in Tennessee,

with which Etsy was Complicit (Appendix , Exhibit  ). Etsy, Inc maintained

systematic and continual physical contact with Plaintiff Puckett in its business

relationship over which it regulated and reported on including the Tennessee State

tax revenues it collected.

Etsy's activities are directly related to the subject matter of the Plaintiff's

complaint. If the federal constitutional due process limitation is satisfied, then so is

Tennessee's long-arm statute. In the Sixth Circuit, courts apply a three-part test to

determine if exercising specific jurisdiction over a defendant comports with the

Constitution's Due Process Clause: First, the defendant must purposefully avail

himself of the privilege of acting in the forum state or causing a consequence in the

forum state. Etsy's status as a State tax vendor indicates Etsy has purposely availed themselves to the privilege of acting in this forum state. Second, the cause of action must arise from the defendant's activities there. The cause of action as to RICO defendant Etsy arises from its activities within this state. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Etsy's complicity with the fraud in furtherance of the RICO caused consequences to the Plaintiff's here within this district of Tennessee.

If the RICO plaintiff can show that at least one defendant transacts his affairs" in the forum, then jurisdiction is proper as to all other defendants if "the ends of justice require." *Rolls-Royce,* 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.,* 401 F.Supp.2d 712, 718 (W.D. Tex. 2005). The Constitution requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The purpose of the minimum contacts requirement is to protect the defendant against the burdens of litigating in a distant or inconvenient forum, and to ensure that states do not reach out beyond the limits

of their sovereignty imposed by their status in a federal system. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). If a defendant's activities there are "substantial, continuous and systematic," a federal court may exercise jurisdiction as to any cause of action, even if unrelated to the defendant's activities within the state. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S. Ct. 413, 96 L. Ed. 485 (1952). The Courts have not had many opportunities to address the issue of personal jurisdiction as it relates to what is now commonly called e-commerce. E-Commerce refers to business transactions conducted over the Internet. However, the Court's review in the U.S. District Court for the Central District of California - 75 F. Supp. 2d 1104 (C.D. Cal. 1999)  of the available cases reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of the commercial activity that an entity conducts over the Internet. *See Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (E.D.Pa.1997). The courts today have evaluated personal jurisdiction problems associated with e-commerce by using a sliding scale approach. On one end are cases where the defendants' activities are passive, and

merely exemplify the use of the Internet as a global bulletin board. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997). On the other end are cases where the interaction between the defendant and the foreign state resembles a more traditional business transactions. *See Compu-Serve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996) (holding that knowingly entering into a contract with an Ohio resident and then deliberately and repeatedly transmitting files sufficed to uphold a finding of personal jurisdiction in Ohio); *Zippo,* 952 F. Supp. at 1124 (holding that the defendant, who had sold 3,000 subscriptions to Pennsylvania residents and entered into seven contracts with Internet access providers there was subject to personal jurisdiction in Pennsylvania); *Maritz, Inc. v. Cybergold, Inc.,* 947 F. Supp. 1328 (E.D.Mo.1996) (holding that active solicitations and promotions designed to create a mailing list were sufficient to find personal jurisdiction).The Ninth Circuit has held that the purposeful availment requirement is satisfied if a defendant has taken deliberate actions within the forum state or if he has created continuing obligations to forum residents. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995). Addressing the issue of whether a defendant had created a "continuing obligation" to forum residents, but in the context of Internet transactions, the Western District of Pennsylvania held that "[i]f the defendant enters into contracts

13

with residents of foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet computer network, personal jurisdiction over the defendant is proper." *Zippo,* 952 F. Supp. at 1124. Also addressing that particular issue, a Texas district court held that an on-line casino based out of California was subject to the personal jurisdiction of the Texas courts because the defendant "entered into contracts with the residents of various states knowing that it would receive commercial gain at the present time." *Thompson v. Handa-Lopez, Inc.,* 998 F. Supp. 738, 743-44 (W.D.Tex. 1998).[ As such, the Texas court found that personal jurisdiction was proper. Limited jurisdiction also requires the court to limit its jurisdiction to causes of action arising out of the non residents forum-related activities. In a recent case before the Supreme court, *see SOUTH DAKOTA v. WAYFAIR, INC., ET AL 585 U. S. ____ (2018)* The Supreme court recently reconsidered its own precedent on the requirement of physical presence *"given the ecommerce society which exists today in commerce It is settled law that a business need not have a physical presence in a State to satisfy the demands of due process. Burger King Corp. v. Rudzewicz, 471 U. S. 462, 476 (1985). Although physical presence "'frequently will enhance'" a business' connection with a State, "'it is an inescapable fact of modern commercial life that*

14

*a substantial amount of business is transacted . . . [with no] need for physical presence within a State in which business is conducted.'" Quill, 504 U. S., at 308. Quill itself recognized that "[t]he requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State." Ibid. ,a company with a website accessible in South Dakota may be said to have a physical presence in the State via the customers' computers. A website may leave cookies saved to the customers' hard drives, or customers may download the company's app onto their phones. Or a company may lease data storage that is permanently, or even occasionally, located in South Dakota. Cf. United States v. Microsoft Corp., 584 U. S. ___ (2018) (per curiam). en apparent from the outset. 504 U. S., at 315. The "dramatic technological and social changes" of our "increasingly interconnected economy" mean that buyers are "closer to most major retailers" than ever before— "regardless of how close or far the nearest storefront is." Direct Marketing Assn. v. Brohl, 575 U. S. ___, ___, ___ (2015) (KENNEDY, J., concurring) (slip op., at 2, 3). Between targeted advertising and instant access to most consumers via any internet-enabled device, "a business may be present in a State in a meaningful way without" that presence "being physical in the traditional*

*sense of the term." Id., at ___ (slip op., at 3).This Court should not maintain a rule that ignores these substantial virtual connections to the State. Although we approach the reconsideration of our decisions with the utmost caution, stare decisis is not an inexorable command." Pearson v. Callahan, 555 U. S. 223, 233 (2009) (quoting State Oil Co. v. Khan, 522 U. S. 3, 20 (1997); alterations and internal quotation marks omitted). Here, stare decisis can no longer support the Court's prohibition of a valid exercise of the States' sovereign power the real world implementation of Commerce Clause doctrines now makes it manifest that the physical presence rule as defined by Quill must give way to the "far-reaching systemic and structural changes in the economy" and "many other societal dimensions" caused by the Cyber Age. Direct Marketing, 575 U. S., at ___ (KENNEDY, J., concurring) (slip op., at 3). physical presence rule. The argument, moreover, that the physical presence rule is clear and easy to apply is unsound. Attempts to apply the physical presence rule to online retail sales are proving unworkable. States are already confronting the complexities of defining physical presence in the Cyber Age. For example, Massachusetts proposed a regulation that would have defined physical presence to include making apps available to be downloaded by in-state residents and placing cookies on in-state residents' web 20*

16

*SOUTH DAKOTA v. WAYFAIR, INC. Opinion of the Court browsers. See 830 Code Mass. Regs. 64H.1.7 (2017). Ohio recently adopted a similar standard. See Ohio Rev. Code Ann. §5741.01(I)(2)(i) (Lexis Supp. 2018). from major businesses. For these reasons, the Court concludes that the physical presence rule of Quill is unsound and incorrect. The Court's decisions in Quill Corp. v. North Dakota, 504 U. S. 298 (1992), and National Bellas Hess, Inc. v. Department of Revenue of Ill., 386 U. S. 753 (1967), should be, and now are, overruled. 1 (2009). Here, the nexus is clearly sufficient based on both the economic and virtual contacts respondents have with the State.* Etsy places cookies on residents' computers including the Plaintiff's (Exhibit 12) located in Tennessee and within this district in order to collect the data therefrom and use in the analytics applied to algorithm development in their marketing strategies for advertising in this state. This court therefore has jurisdiction over RICO defendant Etsy. If the plaintiff can show that at least one RICO defendant transacts his affairs" in the forum, then jurisdiction is proper as to all other defendants if "the ends of justice require." *Rolls-Royce,* 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.,* 401 F.Supp.2d 712, 718 (W.D. Tex. 2005).

**ARGUMENT II**        This Court has personal jurisdiction over **RICO defendant**

**NBA** because NBA transacts its affairs in this State and in this district through its

aggressive online advertising and promotions of goods for profit within this state

and within this district through its online NBA store promoting merchandise as

"collectibles" within this district and to the Plaintiffs and aggressively advertise the

sale of its merchandise within this district (Exhibit 13). The NBA is domiciled in

New York but exercises continuous and systematic contact within this state and

within this district. Additionally, The National Basketball Association, or NBA, is

a professional basketball league and regulates a collective bargaining agreement

over the players on the Memphis grizzlies and is a registered tax vendor within this

state and district and regularly transacts its affairs within this State and within this

district. The NBA through its online e-commerce store, promotes the sales of

tickets online to consumers within this state and within this district and plants

cookies on residents computers including the Plaintiff's to establish a physical

presence and to actively use the information obtained from the computers to

formulate aggressive advertising algorithms to increase its online sales within this

state and within this district. The RICO defendant NBA's resale of preowned

collectibles provided by CO-RICO defendant Kareem Abdul Jabbar is directly

related to the activities it conducts within the state of Tennessee and within

this district, activities which are continuous and systematic and establish the courts

jurisdiction over RICO defendant NBA. The RICO defendant NBA itself has

asserted in cases in the N.D. Ill. that it has standing in any state in which one of its

30 teams are located which includes the Chicago Bulls (Exhibit 14). If the plaintiff

can show that at least one RICO defendant transacts his affairs" in the forum, then

jurisdiction is proper as to all other defendants if "the ends of justice require."

*Rolls-Royce,* 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.,* 401

F.Supp.2d 712, 718 (W.D. Tex. 2005).

**ARGUMENT III**  This court has jurisdiction over **RICO DEFENDANT Ain**

**Jeem, Inc**. and its corporate officers Kareem Abdul Jabbar (CEO and Deborah

Morales (Secretary) (Exhibit 15). For jurisdictional purposes, the acts of corporate

officers and directors in their official capacities are the acts of the corporation

exclusively and are thus not material for purposes of establishing minimum

contacts as to the individuals. *See Shearer v. Superior Court,* 70 Cal. App. 3d 424,

430, 138 Cal. Rptr. 824 (1977). Implicit in this principle is the consideration that

corporations are separate legal entities that cannot act on their own but must do so

19

through their appointed representatives. *See Mihlon v. Superior Court,* 169 Cal.

App. 3d 703, 713, 215 Cal. Rptr. 442 (1985). Accordingly, acts performed by these

individuals, in their official capacities, cannot reasonably be attributed to them as

individual acts creating personal jurisdiction.  If the corporation is the "alter ego"

of the individual defendants so as to justify disregard of the corporate entity, then a

finding of personal jurisdiction over the corporation will support a finding of

personal jurisdiction over the individuals. *See Flynt Distrib. Co.,* 734 F.2d at 1393;

*Sheard v. Superior Court,* 40 Cal. App. 3d 207, 210, 114 Cal. Rptr. 743 (1974).In

order to prevail on an alter ego theory, plaintiff must make a prima facie case "(1)

that there is such unity of interest and ownership that the separate personalities of

ain jeem, inc and Kareem abdul jabbar no longer exist and (2) that failure to

disregard would result in fraud or injustice." *Flynt,* 734 F.2d at 1393. In *Flynt,* the

plaintiff made a prima facie showing of an alter ego relationship by submitting

affidavits indicating that the two sole shareholders of several corporations had

converted corporate assets for their own use, had dealt with the various

corporations as if they were one. As cited in the Plaintiff's complaint Kareem

Abdul Jabbar had testified in the U.S. Federal court that he is Ain Jeem and he

solely owned and operated Ain Jeem, Inc. Ain Jeem Inc is a personal loan out

company and alter ego of Kareem Abdul Jabbar who along with his business

manager Deborah Morales as secretary of Ain Jeem inc (Exhibit 15). The

California State filings falsely stated Ain Jeem, INc. was incorporated in Delaware

as a foreign stock corporation and the business manager of Kareem Abdul Jabbar

conspired to commit fraud and engage in racketeering activity causing damages to

the Plaintiff's here in Tennessee. The Fraud extends to it's Delaware Incorporation

documents file number 877448 (Exhibit 16). Ain Jeem, Inc Delaware corporation

filings indicate it was registered as a "General Entity" - non-profit or religious

organization (Exhibit 16). Ain Jeem, Inc also registered as a domestic company

domiciled in Delaware which was also a fraud (Exhibit 16).**RICO defendant**

**Kareem Abdul Jabbar** has had regularly physical contact with this forum and the

Memphis Grizzlies in Memphis Tennessee and at one point considering a full time

coaching position with the Memphis Grizzlies. Ain Jeem Inc/Kareem Abdul Jabbar

also regularly advertises his online business of www.shopKareemAbdulJabbar.com

and conducts sales of merchandise within this state and within this district and

regularly transacts his affairs within this state and within this district. Ain Jeem

Inc/Kareem Abdul Jabbar's e commerce store establishes a physical presence by

planting cookies on consumers computers here in Tennessee and within this district

including the Plaintiff;s computer (Exhibit 17) and has continuous and systematic

contact within this state and within this district by actively advertising its e

commerce store and generating revenue within the State of Tennessee. Iconomy

Deborah Morales is also responsible for **Ain Jeem Inc.'s** product licensing and the

sale of its goods and those unlawfully obtained from the RICO through

www.shopKareemAbdulJabbar which advertises and sells these goods and services

of organizing riots (Exhibit 18) and regularly transacts affairs within this state and

within the district of this court.  If the plaintiff can show that at least one RICO

defendant transacts his affairs" in the forum, then jurisdiction is proper as to all

other defendants if "the ends of justice require." *Rolls-Royce,* 576 F.Supp.2d at

779; *Paolino v. Argyll Equities, L.L.C.,* 401 F.Supp.2d 712, 718 (W.D. Tex. 2005).

**ARGUMENT IV** This court has jurisdiction over **RICO firm Brickell Group**

**Pllc** and the **Rico defendant Attorneys Guerra, Weaver, Fondura, and Pineiro**

who from the outset of its RICO, required the Puckett's to contact them. Upon

contact the **Brickellip Group Pllc** placed their digital footprint on the Puckett's

computer establishing a physical contact within this court's jurisdiction. The URL

info and detailed cookie information that was placed upon the Puckett's computer

is attached as (Exhibit 19). The RICO firm on numerous occasions misappropriated

And published the confidential business records and trade secrets belonging to the

Pucketts here in Tennessee, and during the course of their operation continuously

and systematically continued a wrongful seizure and misappropriation of

confidential business records and trade secrets belonging to Plaintiff's here in

Tennessee. The RICO firm still maintains unlawful possession and control of the

Plaintiffs confidential records and trade secrets as of the date of the filing of this

motion which continues to cause damages to Plaintiffs here in Tennessee and

within this district.  If the plaintiff can show that at least one RICO defendant

transacts his affairs" in the forum, then jurisdiction is proper as to all other

defendants if "the ends of justice require." *Rolls-Royce,* 576 F.Supp.2d at 779;

*Paolino v. Argyll Equities, L.L.C.,* 401 F.Supp.2d 712, 718 (W.D. Tex. 2005).

Personal jurisdiction based on a website engaged in electronic commerce

would not have been possible five years ago, and was certainly not the

understanding of jurists in 1868, when the Fourteenth Amendment was adopted.

Thus the Court must look to "contemporary notions of due process" to determine

whether personal jurisdiction is allowable. *See Burnham v. Superior Court,* 495

U.S. 604, 630, 110 S. Ct. 2105, 2120, 109 L. Ed. 2d 631 (1990) (Brennan, J.

concurring). It cannot be said, in light of the mobility of today's society, the ease of

instantaneous communication between people on opposite sides of the globe,[10]

and the frequency of interstate travel, that it would offend the Constitution to

require an entity to defend a case under federal law in a state within which it has

engaged in commerce, In the instant case, the nature of the RICO defendant's

websites are highly commercial. A substantial portion of the site is dedicated to

allowing the consumer to purchase products on-line. RICO defendants on-line

Sales, including the sales of the preowned collectibles and ill gotten gains from the

RICO, constitutes conducting business over the Internet, and therefore under the

test enumerated in *Zippo,* 952 F. Supp. at 1124, asserting personal jurisdiction

comports with due process.

Asserting personal jurisdiction in this case is also consistent with the familiar

precedents of "minimum contacts" jurisprudence. By maintaining a commercial

website through which it markets and sells its goods, RICO defendants NBA and

Kareem Abdul Jabbar have reached out beyond their home states to avail

themselves of the benefits of the Tennessee forum. *See Burger King Corp.,* 471

U.S. at 473-474, 105 S. Ct. at 2182.Although the actual number of sales by RICO

defendant Kareem ABdul Jabbar DBA Ain Jeem, Inc to Tennessee citizens may be

24

small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts. *See CompuServe,* 89 F.3d at 1265. By advertising and offering its products for sale via the Internet, RICO defendants have placed their products and services into the stream of commerce intending that they would be purchased by consumers with access to the Web, including Tennessee citizens. By engaging in Internet commerce with Tennessee citizens, RICO defendants have established the minimum contacts that are a prerequisite to the exercise of jurisdiction over it.The Sixth Circuit's decision in *CompuServe* addressed the emerging commercial realities of the Internet when it stated that "[s]omeone ... who employs a computer network service like CompuServe to market a product can reasonably expect disputes with that service to yield lawsuits in the service's home state." 89 F.3d at 1268. A synthesis of these two cases creates the outline of a rule where personal jurisdiction is not appropriate when a website is merely a passive, either as an advertisement or for informational purposes, but is appropriate when an entity is conducting business over the Internet. In *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D.Pa.1997). In order for a forum state to properly assert jurisdiction over an out of state defendant, the defendant must have purposefully directed its activities towards residents of the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, **1077** 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). Further, the forum-related activities must be related to the

25

claim, and the exercise of jurisdiction must be reasonable. *See Ballard v. Savage,*
65 F.3d 1495, 1498 (9th Cir.1995). Modern jurisprudence on personal jurisdiction
allows a court to exercise personal jurisdiction only in cases where a defendant has
sufficient "minimum contacts" with the forum state that are either continuous and
systematic or are so related to the lawsuit that the exercise of personal jurisdiction
does not offend "traditional notions of fair play and substantial justice."
*International Shoe,* 326 U.S. at 316, 66 S. Ct. at 158.The Courts have not had
many opportunities to address the issue of personal jurisdiction as it relates to what
is now commonly called e-commerce. However, review of the available cases
reveals that the likelihood that personal jurisdiction can be constitutionally
exercised is directly proportionate to the nature and quality of the commercial
activity that an entity conducts over the Internet. *See Zippo Manufacturing
Company v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (E.D.Pa.1997).  If the
RICO plaintiff can show that at least one defendant transacts his affairs" in the
forum, then jurisdiction is proper as to all other defendants if "the ends of justice
require." *Rolls-Royce,* 576 F.Supp.2d at 779; *Paolino v. Argyll Equities, L.L.C.,*
401 F.Supp.2d 712, 718 (W.D. Tex. 2005)

## OPPOSITION TO RICO DEFENDANT MILBRATH'S CLAIM THAT THE FACTS OF PLAINTIFF'S COMPLAINT DO NOT SUPPORT A CLAIM UPON WHICH ENTITLEMENT CAN BE BASED

Plaintiffs assert  RICO defendant MIlbrath is simply wrong that the Plaintiff's
have not set forth any facts in support of their RICO claims and cites portions of

the charges commenting there are no details (Defendant Motion p. 6) Each charge

begins with The allegations of paragraphs 1 through 429 are incorporated herein by

reference. And an Appendix A and B which are quite extensive were submitted in

support of their claims. RICO defendant Milbrath also falsely asserts that the RICO

operating through an abuse of judicial process in an unlawful means is merely

Plaintiff's attempts at characterizing as illegal the legal acts of the RICO

defendants involved. Plaintiff's included in their exhibits the congressional reports,

international treaties to which the U.S. is a signed member, statutes and other

authorities supporting their claims which the RICO defendants operated in

violation of. RICO defendant Milbrath's motion is froth with intentional

misrepresentations and false claims before this court for which the Plaintiff's

served the FRCP rule 11 notice on RICO defendant Milbrath on August

24th 2023. The facts and exhibits set forth in Plaintiff's opposition to RICO

defendant Milbrath's Motion to dismiss does establish jurisdiction before this court

in addition to Plaintiff's ability to provide more extensive details as to time, place ,

Exact content of false statements and fraud by RICO defendant Milbrath, to

warrant any denial of dismissal without opportunity and leave to amend if

Necessary. F.R.C.P. 15 (a)(2) states the court should freely give leave to amend

when justice so requires it.

**WHEREFORE,** based upon the facts as stated herein, legal memorandum and

Appendix "D" of exhibits attached hereto, as well as the Exhibits of Appendix

"A","B", and "C" already on file in this case, the Plaintiff's respectfully request the court deny RICO defendant Milbrath's motion to dismiss under F.R.C.P. 12 (b)(2) and (6) the Plaintiff's complaint and that the court finds it has jurisdiction in this case and if the court deems necessary permit the Plaintiff's leave to amend their Complaint.

## **VERIFICATION**

We, the Plaintiffs, Carl Puckett "Pro-Se" and Marcella Puckett "Pro-Se" declare under penalty of perjury under the laws of the UNited States that the foregoing is true and correct to the best of our knowledge, executed on this 2nd day of September, 2023, in Martin Tennessee.

Respectfully submitted,                    Executed 9/2/2023

_____

Carl Puckett Plaintiff "Pro-Se"

_____

Marcella Puckett Plaintiff "Pro-Se"

## Certificate of service

I Marcella Puckett, do hereby certify that on September 2nd, 2023 that the

Foregoing Response in Opposition to RICO defendant Milbraths Motion to dismiss

the Plaintiff's complaint, supporting Appendix ":D" of exhibits in support thereof

and including this certificate of service was emailed to RICO defendant Stephen D

Milbrath at smilbrath@acceliplaw.com and a true and correct copy with prepaid

postage attached thereto was then placed in the United States Mail in Martin

Tennessee and addressed to Attorney Stephen S. Milbrath Orlando Area Office at

307 Cranes Roost Blvd, Ste. 2010, Altamonte Springs, Fl. 32701. I declare under

penalty of perjury that the foregoing is true and correct Executed in Martin

Tennessee on this 2nd day of September, 2023.


Marcella Puckett

_____

Marcella Puckett