IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CARL PUCKETT
and MARCELLA PUCKETT,

     Plaintiffs,

v.                                                    Case No. 1:23-cv-01143-STA-jay

AIN JEEM, INC., et al.,

     Defendants.

---

## DEFENDANT A. ROBERT WEAVER'S EMERGENCY MOTION TO SANCTION PLAINTIFFS AND EITHER DISMISS PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE STAY THIS ACTION

---

*Pro Se* Defendant, Arthur Robert Weaver ("I" or "Undersigned Counsel") hereby submits this Emergency Motion to Sanction Plaintiffs Carl Puckett and Marcell Puckett (collectively, "Plaintiffs") and either dismiss their Complaint [D.E. 1] pursuant to Fed. R. Civ. P. 12 or in the alternative immediately stay this action, and in support thereof respectfully refers the Court to the following Memorandum of Law:

## MEMORANDUM OF LAW

## I.    INTRODUCTION

***Enough is enough***. "Because the mere assertion of a RICO claim has an almost stigmatizing effect on those named defendants, courts should strive to flush out frivolous RICO allegations at an early stage in the litigation." *Sky Medical Supply Inc. v. SCS Support Claims Services, Inc.*, 17 F.Supp.3d 207, 220 (E.D.N.Y. 2014). Such a warning has never been truer than in this case.

Evidently dissatisfied with the stigmatizing effect of filing several lawsuits naming over a dozen defendants in federal court, *pro se* plaintiff Marcella Puckett[1] recently began harassing Undersigned Counsel through comments on the Undersigned's social media account:[2]



Marcella Puckett did not stop with the Undersigned, but continued on with harassing one of Undersigned Counsel's Firm's law student clerks:



---

[1] Upon information and belief, Plaintiff Marcella Puckett's maiden or prior name is Marcella Anderson. This plaintiff is referred to herein as Marcella Puckett or Ms. Puckett for consistency's sake.

[2] Plaintiff Marcella Puckett commented on two of Undersigned Counsel's LinkedIn postings. One here, the other here. Weaver Decl., ¶ 6.

The allegations accusing the Undersigned of participating in a RICO scheme with attorneys at the Brickell IP Group, PLLC, clients of the Brickell IP Group, PLLC, unrelated attorneys whose only sin is serving as opposing counsel in a Middle District of Florida trademark infringement action to which Plaintiff Carl Puckett was a co-defendant, a third-party investigative group used to collect evidence in that action, the federal district judge presiding over that action, and the federal magistrate judge who was referred certain issues in that action are far from plausible.

Although Undersigned Counsel has not yet been served, and Undersigned Counsel is not subject to personal jurisdiction in this Court, there is now an urgent and immediate need for Court intervention. Plaintiffs no doubt intend to harass, and likely sue, yet more individuals as loosely "participating in the operation of the [Brickell IP Group] in any way" per Plaintiff Marcella Puckett's warning.

It is well within this Court's inherent authority to stay proceedings and issue injunctive relief against reckless *pro se* plaintiffs. Undersigned Counsel is requesting the Court expeditiously enter the following relief:

- staying this action pursuant to the Court's inherent authority, including any deadline for additional co-Defendants to appear or respond to the Complaint, until the Court has reviewed Plaintiffs' Complaint and adjudicated the Undersigned Counsel's Motion to Dismiss as well as the previously filed Motions to Dismiss [D.E. 10], [D.E. 16] so as to prevent the waste of party and judicial resources;

- entering a "gag" order pursuant to this Court's inherent authority restricting Plaintiffs' proclivity for extrajudicial commentary during the pendency of this action so as to prevent this dispute from devolving into a proverbial circus;

- dismissing the Undersigned for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2);

- dismissing Plaintiffs' Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3);

- dismissing Plaintiffs' Complaint for failing to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) because

  o Plaintiffs' claims are barred by *res judicata* and/or the two dismissal rule,

  o Plaintiffs cannot allege concrete damages or Defendants' causal link to any such damages, and

  o The Complaint fails to plausibly plead a claim for relief; and

- upon dismissing Plaintiffs' Complaint, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, enjoining Plaintiffs from re-filing any pleading, claim, or action against any of the Defendants named in this action without Plaintiffs first: a) posting a contempt bond; b) attesting that they have read that Court's local rules and rules of professional responsibility; and c) attaching a copy of this Court's order to the extent any such refiling is not in this action; and

- any other such relief that this Court deems just and proper under these extraordinary circumstances.

## II. FACTUAL BACKGROUND

The facts giving rise to this action are accurately reflected in co-defendant Richard Guerra's pending motion to dismiss (the "Guerra Motion") [D.E. 16]. In June 2021, The Brickell IP Group, PLLC initiated a trademark infringement action in the Middle District of Florida on behalf of Ain Jeem, Inc., a co-defendant in this action. Guerra Motion, at 10. That underlying litigation

concerned several defendants/sellers of goods infringing on trademark rights related to famous basketball star Kareem Abdul Jabbar, another co-defendant in this action. *Id*. One such infringing item was a commemorative plate offered for sale by plaintiff Carl Puckett. *Id.* Mr. Puckett was voluntarily dismissed early in that action, and any restraints on Mr. Puckett's account were released. *Id*.

Notwithstanding Mr. Puckett's early dismissal, Mr. Puckett filed a counterclaim and submitted ***hundreds*** of filings including multiple appeals to the Eleventh Circuit, a *cert* petition to the United States Supreme Court, and a separate action in the Middle District of Florida. Guerra Motion, at 10-12. This is the second lawsuit filed in this District concerning the underlying facts – the first was recommended for dismissal upon *sua sponte* review by this Court. *Puckett v. National Basketball Ass'n*, 1:22-cv-01236-STA-jay (W.D. Tenn. July 31, 2023)[3]

The allegations with respect to Undersigned Counsel are particularly specious. Undersigned Counsel is alleged to generally have been "associated with the enterprise and engaged in activities" that are tortious. Compl., at ¶ 25. The Complaint acknowledges that Undersigned Counsel is domiciled in Florida, and the Complaint lacks any allegation as to how personal jurisdiction or venue is proper over the Undersigned. *See id*, at ¶¶ 25-27. The Undersigned is alleged to be representing a "Russian Federation Company" through an allegedly unlicensed practice of law in the Western District of Texas.[4] *Id*., ¶¶ 31, 35. The Undersigned is alleged to be part of the Brickell IP Group enterprise, which "Judge Virginia Hernandez-Convington and Magistrate Anthony E. Porcelli participated in and took control of" in 2021. *Id*., ¶ 430. As best as

---

[3] Plaintiffs voluntarily dismissed that action without prejudice before the District Judge could adopt the report and recommendation.

[4] A simple public attorney-lookup demonstrates that the Undersigned is admitted to practice in the Western District of Texas. *See* https://ecf.txwd.uscourts.gov/cgi-bin/addrbook.cgi

the Undersign can gather from the 537 paragraph Complaint, this constitutes the entirety of the allegations against Undersigned Counsel.

Other than this action, Undersigned Counsel has no ties to Tennessee. Undersigned Counsel has never resided in Tennessee; has never owned, used, possessed, or held a mortgage or lien on any real property within Tennessee; has never owned or operated a business or business venture in Tennessee; has never maintained a bank account or savings account in Tennessee; has never maintained a telephone listing in Tennessee; and has never advertised or marketed services to any residents of Tennessee. Declaration of A. Robert Weaver ("Weaver Decl."), at ¶ 3.

Additionally, Undersigned Counsel never appeared in the underlying Middle District of Florida litigation. Weaver Decl., ¶ 4. While Undersigned Counsel is generally aware of the facts and issues in that case, Undersigned Counsel never participated in that case and certainly never contacted or spoke with the Plaintiffs in this action. *Id*. The first contact Undersigned Counsel ever had with either Plaintiff was an e-mail from Marcella Puckett on July 9, 2023 when Undersigned Counsel was served by e-mail a notice of appeal for reasons unknown. *Id*., ¶ 5. The next contact was on July 22, 2023 was an e-mail from Marcella Puckett requesting Undersigned Counsel waive service served. *Id*. The only other contact from Marcella Puckett to Undersigned Counsel was on Undersigned Counsel's LinkedIn page. *Id*., ¶ 6. On October 12, 2023, Marcella Puckett unexpectedly made two comments on Undersigned Counsel's LinkedIn's posts, threatening all associated with Undersigned Counsel's firm. *Id*. Harassing Undersigned Counsel was not enough for Ms. Puckett, as she also threatened a law student clerk of Undersigned Counsel's firm. *Id.*, ¶ 7.

In sum, Undersigned Counsel had nothing to do with the underlying Florida action, is not alleged to have had anything to do with the underlying Florida action, and yet has been roped into

this litigation merely by association not unlike the co-defendants who were defense counsel in the underlying litigation as well as the federal judges who presided over the underlying litigation.

## III.   LEGAL ARGUMENT

### A.   If the Court Does Not Immediately Dismiss the Complaint, the Case Should At Least be Stayed Pending Adjudication of the Motions to Dismiss

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Doe v. Lee*, No. 3:21-cv-10, 2023 WL 2904575, at *4 (E.D. Tenn. April 11, 2023) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "But a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Id*. (*citing Ohio Env't Couns. v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

Two co-Defendants previously filed motions to dismiss in addition to Undersigned Counsel's arguments *infra* to dismiss Plaintiffs' Complaint. Plaintiffs have also shown a proclivity to multiple these proceedings through their own filings. On August 30, 2023 Plaintiffs filed a motion to extend their page limits in response to co-defendant Milbrath's motion to dismiss [D.E. 12] as well as an Emergency Ex Parte Motion to File Under Seal and for Expedited Jurisdictional Discovery and to Amend their Complaint [D.E. 13]. On September 25, 2023 Plaintiffs filed two additional motions: a motion for leave to file a corrected response to co-defendant Guerra's motion to dismiss [D.E. 20]; and a motion to extend time to execute service on the remaining co-defendants [D.E. 21]. Plaintiffs also requested leave to reply to co-defendant Guerra's motion to dismiss [D.E. 23].

Considering Plaintiffs' history of voluminous filings, a pattern which is already surfacing in this action, Undersigned Counsel respectfully submits that a temporary stay is appropriate until

the Court has adjudicated Undersigned Counsel's motion to dismiss along with the motions filed by co-Defendants Guerra and Milbrath. Such a stay would be in the interest of the Court as it will avoid wading through the anticipated thousands of pages of motion practice. Conversely, it would likely be in the interest of the yet-to-appear co-Defendants as undoubtedly many of the issues they would raise in a motion to dismiss would already have been adjudicated by the Court. Finally, issuing a stay would not prejudice the Plaintiffs as it would streamline the litigation towards resolution in the interest of all parties.

Accordingly, Undersigned Counsel respectfully requests the Court stay this Action for the benefit of the Court and all parties until such time as the Court can adjudicate the pending motions to dismiss.

### B.   Plaintiffs' Threatening Posts on the Undersigned's Social Media Accounts Necessitates a Narrowly Tailored Gag Order During the Pendency of this Action

Gag orders from making extrajudicial statements about a party's own case are rare because a gag order amounts to a prior restraint on speech. *Doe v. City of San Diego*, 2014 WL 11997808 (S.D. Cal. Feb. 13, 2014) (*citing Levine v. U.S. Dist. Ct. for the Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985)). Courts can issue a gag order if the moving party establishes (1) the activity restrained poses a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *Id*.

The Sixth Circuit employs a "clear and present danger" test, permitting gag orders where a specific threat exists and the court crafts a remedy that is narrowly tailored. *U.S. v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987). Here, Plaintiff's Marcella Anderson's commentary on ***Undersigned Counsel's*** social media account as well as the social media account for a ***law student clerk*** interning with the Brickell IP Group constitutes a specific threat, namely warning "anyone participating in the operation" of Undersigned Counsel's law firm that they would be dragged into

this litigation. The threat is real given Plaintiffs' highly litigious history and demonstrated willingness to allege that *inter alia* federal judges are apparently leading the Undersigned's firm's RICO enterprise, an enterprise which also apparently includes opposing counsel for the co-defendants in the underlying Florida case.

>    ***Undersigned Counsel cannot over emphasize the urgency of this issue – Plaintiff Marcella Puckett is actively harassing and threatening <u>anyone</u> associated with Undersigned Counsel's firm, <u>including law student clerks</u>***. Allowing Plaintiffs to continue with inflammatory posts will undoubtedly have an adverse and chilling effect on Undersigned Counsel, the Undersigned Counsel's law firm, and anyone who may dare to comment or interact with Undersigned Counsel's social media posts.

Undersigned Counsel requests the Court enter a narrowly tailored order enjoining the Plaintiffs from posting on any online account owned or operated by any Defendant, including any Defendants' social media account (*e.g.* LinkedIn, Facebook, Twitter, Instagram, etc.) or public rating platform (*e.g.* Google Reviews, Yelp, Avvo, etc.), as well as requiring Plaintiffs attest that they have reviewed and will abide by Tennessee Rules of Professional Conduct, Rule 3.6 concerning extrajudicial statements. This order is necessary because: a) there is a clear and immediate threat that Plaintiffs' continued, and likely to be escalated, extrajudicial conduct would impose on the Defendants; b) the Defendants are unable to fully control or police Plaintiffs' postings on these accounts on third party platforms; and c) the *pro se* Plaintiffs are likely unfamiliar with, and untethered to, the Rules of Professional Responsibility governing counsel's extrajudicial statements. *See U.S. v. McGregor*, 838 F.Supp.2d 1256 (M.D. Ala. 2012) (declining to enter gag order because professional rules sufficiently governed). This restraint is also narrowly tailored and would not prevent Plaintiffs from making statements on their *own* accounts, on third-party websites

or platforms unaffiliated with any Defendant, or any other contemplated form of speech so long that Plaintiffs refrain from posting or commenting on the *Defendants*' accounts and rating platforms during the pendency of this action.

### C.     The Complaint Should be Dismissed

#### 1.     The Court Lacks Personal Jurisdiction

Plaintiffs cannot establish general jurisdiction because Undersigned Counsel has no continuous and systemic contacts with the forum state as to render Undersigned Counsel essentially at home. *BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1558 (2017). Undersigned Counsel is not a Tennessee resident, does not own or operate any business in Tennessee, has no bank account in Tennessee, or has any other ties to state that would give rise to general jurisdiction in this state. Weaver Decl., ¶ 3.

There is also no specific jurisdiction over Undersigned Counsel. Plaintiffs have not alleged specific facts to show that the Court has specific jurisdiction. *See Puckett v. National Basketball Ass'n*, 1:22-cv-1236-STA-jay, at 17-20 (W.D. Tenn. July 31, 2023) (report and recommendation to dismiss NBA and Kareem Abdul Jabbar for *inter alia* lack of personal jurisdiction). The entirety of Plaintiffs' allegations against Undersigned Counsel is that I am an attorney with the Brickell IP Group and that I am representing a Russian company in the Western District of Texas. None of this alleged conduct arises out of this District.

Plaintiffs have generally responded to the co-Defendants that in RICO actions, establishing jurisdiction over one member of an enterprise establishes jurisdiction over all defendants. *See* Plaintiffs' Response to Milbrath Motion [D.E. 15], at 6-7 (*citing Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 778-79 (N.D. Tex. 2008)).

Controlling Sixth Circuit precedent "requires at least one defendant with traditional forum state contacts" in RICO actions. *Peters Broadcast Engineering, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440-41 (6th Cir. 2022). In most Circuits that follow the "forum-state" rule, including the Sixth Circuit, once a RICO action is filed in a district court where personal jurisdiction can be established over at least one defendant, then summonses can be served nationwide on other defendants if required by the ends of justice. *Id*, at 443.

Plaintiffs have not alleged any such minimum contacts with any of the Defendants in this dispute, all of whom reside outside Tennessee. *See* Compl., at ¶¶ 6-25. The only Defendant with any relation to this state is the NBA through the Memphis Grizzlies franchise, but this Court already recommended a finding that "[i]t would not be reasonable to subject Defendant NBA to suit in a state where Plaintiffs have not shown that Defendant NBA had anything to do with the sale, production, advertising, or transportation of such an item herein Tennessee." *Puckett v. National Basketball Ass'n*, No. 1:22-cv-01236, at p. 18.

All Defendants are non-residents, and Plaintiffs bear the burden of identifying an initial defendant that purposefully avails himself of the privilege of acting in the forum state, that the cause of action arose from that defendant's activities, and that the acts or consequences of that defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Peters Broadcast*, at 441. Plaintiffs' allegations must include specific facts in order to make their *prima facie* case. *Id*. Plaintiffs' Complaint must be dismissed for failing to allege specific facts that any defendant has minimum contacts with the state of Tennessee. *Id*., at 442.

### 2.    Venue Is Improper

Plaintiffs allege that venue is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(b). Compl., at ¶ 26. Neither is a proper basis for venue in this action because, as discussed *supra*, none of the events giving rise to Plaintiffs claims occurred in this District, none of the Defendants reside or are located in this District, and the substantial part of the events giving rise to Plaintiffs claims occurred outside of Tennessee, namely Florida. *See Brent v. Hyundai Capital America*, No. 14-2600-STA-dkv, 2014 WL 7335415, at *4-5 (W.D. Ten. Dec. 19, 2014) (dismissing *pro se* RICO complaint).

Moreover, "the availability of an alternative forum is a significant, although not the sole, factor in the "ends of justice" analysis" of § 1965(b) because that section "endeavors to ensure that least one forum is available to a plaintiff litigating RICO conspiracy claims." *Sadighi v. Dahighfekr*, 36 F.Supp.2d 267, 277 (D.S.C. 1999). Assuming *arguendo* that Plaintiffs could state a plausible claim for relief, Florida is the proper venue where the underlying Florida case occurred and the defendants affiliated with the Brickell IP Group reside. Indeed, Plaintiffs previously filed an action arising out of these facts in the Middle District of Florida. *See* Guerra Motion, at 11-12 (discussing *Puckett v. Ain Jeem, Inc.*, No. 8:21-cv-1834 (M.D. Fla.)).

Because the impropriety of venue is so obvious on the face of the Complaint, and because the Complaint has numerous other defects, dismissal rather than transfer pursuant to 28 U.S.C. § 1406(a) is appropriate. *See Brent*, 2014 WL 7335415, at *5 (collecting cases).

### 3.    The Complaint Fails to Plausibly Plead a Claim for Relief

Plaintiffs attempt to allege 11 counts against the Defendants. All appear to be some form of a civil RICO claim. *See* Compl., at ¶¶ 431-537. "Five elements are common to all RICO violations: (1) the commission of at least two predicate RICO offenses; (2) the predicate offenses

formed a "pattern of racketeering activity"; (3) the existence of an "enterprise" as defined under RICO; (4) a connection between the pattern of racketeering activity and the enterprise; and (5) damages resulting from the RICO violation." *Bailey v. Memphis Bonding Company, Inc.*, No. 18-2115, 2019 WL 1300092, at *3 (W.D. Tenn. Mar. 21, 2019) (*citing* 18 U.S.C. § 1962(a)-(c)).

### a.  This is the Fourth Lawsuit in the Dispute – Res Judicata  and the Two Dismissal Rule Bars Plaintiffs' Claims

"Application of res judicata to bar the assertion of a claim in a later action requires the following elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Daniels v. Farm Credit Leasing Servicers, Corp.*, 2:20-cv-02632-SHL, 2022 WL 19396414, at *8 (W.D. Ten. July 27, 2022) (*citing Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997). "Although res judicata is an affirmative defense not typically addressed at the motion to dismiss stage, courts may grant motions based on this defense where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Id.* (citations omitted).

This is the fourth lawsuit arising from the same facts: the underlying Middle District of Florida lawsuit brought by co-Defendant Ain Jeem jointly against several online sellers including Plaintiffs; a separate Middle District of Florida lawsuit brought by Plaintiffs against co-defendants Ain Jeem as well as the law firms the Brickell IP Group and Akerman; a first Western District of Tennessee lawsuit brought against co-defendants NBA and Kareem Abdul Jabbar; and now this action.

Plaintiffs' claims should have *at least* been brought in the initial, underlying Middle District of Florida action as compulsory counterclaims under Fed. R. Civ. P. 13(a). *Daniels*, 2022 WL 19396414. Because the underlying action recently received final judgment, *res judicata* bars

Plaintiffs from relitigating its compulsory counterclaims in this separate action. *See Ain Jeem v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, No. 8:21-cv-1331-VMC (M.D. Fla.) [D.E. 456] (final dismissal, closing case).

Additionally, because this is the ***third*** lawsuit brought by Plaintiffs against these Defendants pursuant to the facts arising out of the Florida litigation (*see* Guerra Motion, at 10-12), the two dismissal rule applies. "A voluntary dismissal under Rule 41(a) has the effect of judgment with prejudice when it is the second suit based on the same transaction." *Calhoun v. U.S.*, No. 12-2307, 2012 WL 3100434, at *2 (W.D. Tenn. July 30, 2012) (*citing Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987)). Plaintiffs' first-filed action in the Middle District of Florida was dismissed. *See* Guerra Motion, at 10. Plaintiff's second-filed action was in this District, which they voluntarily dismissed pursuant to Rule 41(a). Both lawsuits arose from the same transaction, namely the underlying Florida litigation, and both concerned Defendants in this lawsuit. Consequentially, this lawsuit is subject to the two-dismissal rule and should be dismissed with prejudice.

### b. Plaintiffs Fail to Allege a Causal Connection to a Concrete Financial Loss

A RICO claim under § 1962(c) requires that the alleged conduct caused ***Plaintiffs*** a "concrete financial loss." *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992). Such a loss must be an injury to business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). While private litigants can recover damages for racketeering injuries, such injuries must "flow from the commission of the predicate acts." *Id*., at 497. "Section 1964(c)'s causation standard – that the plaintiff suffer injury "by reason of" the defendant's racketeering – is demanding." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (Fed. Cir. 2022). Plaintiffs

must show "that the defendant's violation was both factual and proximate cause of the [their] injury." *Id*.

> ### i.   There is No Causal Connection to Plaintiffs' Damages Because the Presiding Judges are Immune from Liability

Plaintiffs' $23 million in alleged damages fails to pass muster. Compl., at pgs. 171-172. These damages are conclusory, without link to an injury to business or property, and without any allegation as to how they flow from the commission of the predicate acts. Put another way, Plaintiffs have failed to allege that these damages were "by reason" of Defendants' acts. *Grow Michigan*, 50 F.4th at 595.

Notably, the lynchpin to the causation of harm is the presiding federal judges. This alleged RICO conspiracy of an enterprise constituting a trademark rights holder, its counsel, its investigator, opposing counsel, and federal judges is entirely premised on the cooperation of federal judges to issue orders in furtherance of the enterprise. But the doctrine of absolute judicial immunity shields district court judges and magistrate judges from a "sweeping range of judicial actions." *See generally Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). The only way for a judge to escape the protections of judicial immunity is if liability arose from actions not taken outside the judge's judicial capacity or actions taken in the complete absence of all jurisdiction. *Id*., at 1116. Plaintiffs allege no actions taken outside the judges' judicial capacity. Rather, Plaintiffs sporadically allege that the presiding judges "were ministerial without complete court jurisdiction and outside the authority of the court creating null and void orders." *See e.g.* Compl., at ¶ 497. "Jurisdiction is to be broadly construed" for purposes of judicial immunity and requires a clear absence of jurisdiction as opposed to, perhaps, issuing orders in excess of jurisdiction. *Barnes*, at 1122. Here, the presiding judges were empowered to adjudicate a trademark infringement dispute, and their decisions are covered by judicial immunity. This is not the equivalent of "convicting a

defendant of a nonexistent crime." *Id*. Since the presiding judges are immune from liability, Plaintiffs cannot causally connect the alleged harm with the alleged actions of the enterprise.

### ii.    Any Actual Harm to Plaintiffs is Speculative and Unprovable

Any ***actual*** harm to Plaintiffs of any kind, whether an actionable "concrete financial loss" or otherwise, necessarily stems from Plaintiff Carl Puckett being a defendant in the underlying Florida litigation.[5] Because this is the sole source of actual damages, Plaintiffs are situated between a proverbial rock and a hard place. On the one hand, if the underlying Florida litigation has been finally and fully adjudicated, Plaintiffs are precluded from bringing these claims because they would have been compulsory counterclaims before that district court. On the other hand, if the underlying Florida litigation is pending in some respects, alleged RICO injuries that depend on the results of pending litigation are too speculative. *Sky Medical Supply Inc.* 17 F.Supp.3d at 231-32. "Under this rule, a claim will be dismissed for lack of statutory standing where the extent of damages are still unknown, and therefore a RICO injury remains speculative and unprovable." *Id.*, at 231.

Undersigned Counsel respectfully submits that *res judicata* and the two dismissal rule preclude Plaintiffs from now bringing these claims. Should the Court disagree and believe the window remains open in a prior litigation, then Plaintiffs' claims should still be dismissed because their alleged damages are speculative and unripe. One way or another, this is not the Court for these claims.

---

[5] Plaintiff Marcella Puckett was not a defendant in the underlying Florida litigation and, thus, experienced no harm of any sort. She lacks standing to bring these claims. These are Carl Puckett's claims alone, and Marcella Puckett's involvement continues her unlicensed practice of law on his behalf. *See* Guerra Motion, at 12. Any allegedly derivative injuries to Ms. Puckett are outside the scope of a RICO action. *See Grow Michigan*, 50 F.4th at 596.

        c.        **Plaintiffs Have Not Plausibly Alleged an Underlying RICO Offense for Count I, and Counts II-XI Cannot Serve as Standalone Counts**

Count I references the federal RICO statute 18 U.S.C. § 1962(c), but lacks any allegation of what constitutes the predicate offenses. Construing the *pro se* Plaintiffs' pleading liberally, it seems that Plaintiffs intend the claims listed in Counts II through XI to constitute both standalone counts as well as the underlying RICO offenses for Count I. *See* 18 U.S.C. § 1961(1) (listing what can constitute as "racketeering activity" under Section 1962). However, these allegations are deficient both as standalone counts and underlying offenses, so all counts should be dismissed. *Dixit v. Smith*, No. 2:21-cv-02602-JTF-atc, 2023 WL 6150816, at *6 (W.D. Tenn. Aug. 11, 2023).

Count II appears to allege money laundering under 18 U.S.C. § 1957(a). To serve as a RICO predicate, Plaintiffs must plausibly allege specific facts that the defendant conducted a financial transaction, that the transaction involved the proceeds of specified unlawful activity, that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and that the defendant knew the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc. of those proceeds. *Alix v. McKinsey & Co., Inc.*, 2023 WL 5344892, at *21 (S.D.N.Y. Aug. 18, 2023). The Complaint allegations are merely that an investigator purchased the item at issue in the underlying trademark litigation. Compl., ¶ 442. This is unsupported by the facts because Plaintiffs item was never actually purchased. *See* Guerra Motion, at 10 (underlying litigation concerned Carl Puckett's "offer to sell a commemorative plate," thus no financial transaction occurred). Even so, Plaintiffs fail to allege how any such transaction was concealed, or that the transaction concerned the ***proceeds*** of unlawful activity, *i.e.* money laundering. *Alix*, at *21.

Counts III through V are captioned as claims of fraud, and such allegations are subject to a heightened pleading standard under Rule 9(b). *Dixit v. Smith*, at *6-7. "Where mail fraud and

wire fraud are alleged, courts are particularly sensitive to these pleading requirements, requiring specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Id.*

Count III is stated as a claim under "§ 18 U.S.C. 1028 Fraud Related Activity in Connection With Identification Documents." Compl., at ¶ 448. Plaintiffs appear to be referencing a criminal identity theft statute for which there is no civil remedy. *See Blackstock v. Walgreens*, 2017 WL 4174767, at *2 (D.S.C. Sept. 1, 2017) ("there is no right of civil action under 18 U.S.C. § 1028"); *see also Lucas-Cooper v. Palmetto GBA*, 2006 WL 2583407 (N.D. Ohio 2006) (same). Accordingly, Count III cannot constitute a stand-alone count. To the extent Plaintiffs are alleging an underlying RICO offense in support of Count I, it is unclear what identification documents Plaintiffs are referencing or how that constitutes a RICO offense. Compl., ¶ 451.

Count IV is captioned as "§ 18 U.S.C. 1344 Bank Fraud." Compl., ¶ 456. Like the federal identity theft statute, there is no right of action for private litigants under 18 U.S.C. § 1344. *Ritrovato v. McArthur*, 2023 WL 6475461, at *1 (D. Mass. Oct. 5, 2023). Count IV cannot be a cause of action and should be dismissed. To the extent this conduct is intended to constitute an underlying RICO offense, it is unclear which of the seventeen defendants are the subject of alleged bank fraud. *See* Complaint, at ¶¶ 457-458. It appears that this section of the Complaint is *solely* directed at the federal judges based on "the creation of false orders…in obtaining funds under the custody and control of a financial institution PayPal, Inc." *Id.*, ¶ 459. To the extent a federal judge issuing orders can be an underlying RICO offense, Plaintiffs neglect to identify *which* orders give rise to this claim.

Count V references Electronic Mail Fraud allegedly under "§18 U.S.C. 1037(A)(B)(4)." While 18 U.S.C. § 1037 is a criminal fraud statute related to sending unsolicited electronic mail,

however that subsection does not exist. Again, Section 1037 is not cognizable as a stand-alone civil cause of action. *Gordon v. BAC Home Loans Servicing LP*, 465 Fed.Appx. 731 (9th Cir. 2012). Like the other fraud counts, Plaintiffs merely allege that defendants Stavro and Schonfelder "falsified the title of themselves as Investigators in multiple commercial electronic messages and intentionally initiated the transmission of such to" other co-defendants. Compl., ¶ 468. Without identifying the specific messages, this fails a heightened pleading standard.

Counts VI and VII allege theft of trade secrets. Plaintiffs are required to identify a trade secret with specificity to separate the secret from the general knowledge. *AtriCure, Inc. v. Jian Meng*, 842 Fed.Appx. 974, 980 (6th Cir. 2021). Plaintiffs fail to identify what trade secrets were stolen by the defendants. Compl., at ¶¶ 482-493. The only information alleged is "his private Social Security Number and other sensitive protected information." *Id*., at ¶¶ 482, 488. To the best of Undersigned Counsel's knowledge, Defendants never received Mr. Puckett's social security number. Nevertheless, Plaintiffs fail to allege any plausible facts supporting use of Mr. Puckett's social security number constituted a trade secret. *Sanders v. Brnovich*, 2023 WL 2976886, at *3 (D. Ariz. Mar. 27, 2023).

Count VIII alleges extortionate threats apparently on behalf of the presiding judges, although the threats are never identified aside from a vague reference to the creation of null and void orders. Compl., ¶ 497. Actions related to litigation, even allegedly malicious prosecution or meritless litigation, do not constitute an extortionate act that could be a predicate act under RICO. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004). Again, this also presumes somehow that rulings from federal judges could somehow qualify as extortion.

Finally, Counts IX, X, and XI are "obstruction" counts under 18 U.S.C. § 1503. As with the majority of these criminal statute-based counts, there is no private cause of action for violation

of 18 U.S.C. § 1503. *Carlton Vose v. Paul A. Suttell*, 2023 WL 6621149 (D.R.I. Oct. 11, 2023). These allegations also fail to support underling RICO actions as they lack any specific facts.

### D.   Upon Dismissal, the Court Should Sanction Plaintiffs to Prevent Further Abuse of the Judicial System

Finally, Undersigned echoes the sanctions relief sought by Mr. Guerra. *See* Guerra Motion, at 9-14. This Court is empowered to stop this abuse of the judiciary ***now***, that has literally travelled to the U.S. Supreme Court and back. The Court should enjoin Plaintiffs from filing further lawsuits against these defendants in this or any other federal district court unless Plaintiffs post an appropriate contempt bond, sign an affidavit that that Plaintiffs have read the local rules and that state's rules of professional responsibility, and provide a copy of this Court's order with any such filing. *See e.g. Washington v. Alaimo*, 934 F. Supp. 1395, 1400 (S.D. Ga. 1996) (entering similar order for abusive, *pro se* litigant).

   ***Enough is Enough***.

## IV.   CONCLUSION

WHEREFORE, Undersigned Counsel respectfully requests that this Court GRANT Undersigned Counsel's Motion, either immediately dismiss Plaintiffs' Complaint with prejudice or enter a temporary stay and gag order during this motion's pendency, and upon dismissal sanction Plaintiffs' so as to deter future, frivolous filings, together with any such other relief deemed just and proper.

Respectfully submitted, this 16th day of October.

   */s/ A. Robert Weaver*
   Arthur Robert Weaver, *Pro Se* (Fla. Bar No. 92132)
   THE BRICKELL IP GROUP, PLLC
   1101 Brickell Ave., Suite 800
   Miami, FL 33131
   Telephone: (305) 728-8811
   Email: rweaver@brickellip.com

## CERTIFICATE OF CONFERENCE

In accordance with W.D. Tenn. L.R. 7.2(a)(1)(B), I herby certify that after consultation with Plaintiffs, we were unable to reach an accord as to all issues requested by this Motion.

/s/ A. Robert Weaver
Arthur Robert Weaver

## CERTIFICATE OF SERVICE

I hereby certify that that a copy of the foregoing document has been served via electronic mail this 16th day of October 2023, upon Plaintiffs and addressed as follows:

Carl Puckett
Marcella Puckett
2170 Old Garnder Road
Martin, TN 38237
Email: xfilesxfilesfan@yahoo.com
*Pro Se Plaintiffs*

/s/ A. Robert Weaver
Arthur Robert Weaver