**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

CARL PUCKETT and
MARCELLA PUCKETT,

      Plaintiffs,

v.                                          Case No. 1:23-cv-01143-STA-jay

AIN JEEM, INC., et al.,

      Defendants.
_____/

**DEFENDANT JESSICA KRAMER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Jessica Kramer (referred herein as "Kramer" and/or "Defendant"), pursuant to Fed. R. Civ. P. 12(b)(2), improper venue, 12(b)(6), and W.D. Tenn. L.R. 7.2, hereby submits this Motion to Dismiss Plaintiffs Carl Puckett's and Marcella Puckett's (collectively, "Plaintiffs" or "Pucketts") Complaint [ECF No. 1].

## Introduction

This case is an unfounded attempt to hold Defendant liable for imaginary offenses concocted by Plaintiffs. Ms. Kramer is a litigation attorney in Tampa, Florida. She did not represent the Pucketts and has nothing to do with their outrageous allegations. Ms. Kramer merely represented a co-defendant in a federal case in Tampa, Florida. *Ain Jeem v. The Individual, Partnerships and*

*Unincorporated Associations Identified on Schedule A, et. al.,* Case No. 8:21-cv-01331-VMC-AEP (June 1, 2021, Middle District of Florida) ("Middle District of Florida Case"). Plaintiffs claim that they were unsuccessful in obtaining the relief they sought in Florida, so they launched a collateral attack on the Middle District of Florida Case in the guise of a "RICO" complaint in the Western District of Tennessee.

The allegations of the Complaint are intentionally inflammatory, yet extremely confusing. They are summarized by Plaintiffs as follows: "A Racketeering Influenced Crime Organization has taken over the judicial system in the area of IP and trademark law." Complaint at ¶28. From this very broad and outrageous assertion, Plaintiffs further allege that somehow the lawyers and judges in the Middle District of Florida Case entered into an agreement with the plaintiff in that case to allow trademark claims to be made "knowing there is no legal standing for them to bring suits." Complaint at ¶39. Based on this concocted premise, Plaintiffs have made sweeping and unsupported allegations against approximately 20 defendants, all of whom were involved in some way in the Middle District of Florida Case. As for Ms. Kramer, however, there are no specific allegations of wrongdoing that would qualify as predicate acts or offenses under RICO. Instead, the most plausible interpretation of the allegations is that Ms. Kramer appropriately defended her client and took no direct action against the Pucketts.

## Nature of the Claims

The Pucketts have sued approximately 20 parties, counsel, or judges who were involved in the Middle District of Florida Case. Among the numerous defendants, plaintiffs have named Ms. Kramer in her "personal and professional" capacity. The Complaint fails to allege specific acts that Ms. Kramer supposedly did to injure the plaintiffs. The particular allegations related to Ms. Kramer include the following, and are taken from the complaint:

21. Attorney **Jessica Sarah Kramer** is both personally and professionally liable and is not immune under the Absolute litigation immunity doctrine and is, vicariously, and jointly liable for tortious acts arising from the same occurrences and facts and is therefore permissible joined under F.R.C.P. 19 and 20. Attorney **Jessica Sarah Kramer** acted in both her personal and professional capacity and is domiciled in the State of Florida. Attorney Jessica Sarah Kramer is associated with the enterprise and engaged in activities that affected legitimate interstate commerce and participated directly in the conduct of such enterprise's affairs through a pattern of racketeering activity and did participate both directly and indirectly in the conduct of such enterprise. Attorneys are liable for racketeering activity under the **Reves standard** as determined by the U.S. Supreme Court Reves v. Ernst & Young, 494 U.S. 56 (1990).

207. A few defendants are somehow able to find and retain defense counsel for representation who only offer services for getting the TRO lifted and only present an opposing motion for lack of jurisdiction over their client while ensuring not to address the trademark fraud the shotgun complaint the misjoinder or any of the existing matters that would affect the success of the entire RICO action being repeatedly exercised within the jurisdiction and are complicit with the illegalities of its operation as in this case by Attorney Georffry Lottenberg, Attorney Joyclyn Brown,

Attorney Stephen Milbrath, Attorney Andrew David Lockton, and Attorney Sarah Jessica Kramer who enter into an agreement to immediately dismiss their client WITHOUT prejudice knowing it would bar the remaining unrepresented defendant victims from being able to exercise and procedural due rights to appeal because under the finality doctrine pertaining to multiple defendant cases dismissal without prejudice is not a final order and before any right to appeal can be taken a final order must exist as to all defendants.

396. The RICO firm counsel argued before the appellate court that there was no final or interlocutory order the complainant could rightfully appeal from and that the case was still pending as to 13 defendants and a counterclaim still in litigation between plaintiff and defendant Hall of Fame Sports, and that the finality doctrine bars appellate review in multiple defendant cases until a final judgment has been entered for all.

399. The RICO firm asserted to the appellate court that the counterclaim as to the defendant Hall of Fame Sports was still pending for litigation, while admitting in a status report filed with the district court it had to agree to settle with Attorney Jessica Sarah Kramer representing Hall of Fame Sports without any further court intervention so that no record of finality would appear in the record which the defendant attorney was complicit with knowing such an agreement would prevent other defendants from being able to seek recourse through timely appellate review.

## COUNT I – RICO § 18 U.S. Code 1962(c)

432. The count I is against all named defendants Kareem Abdul Jabbar DBA Ain Jeem, Inc, the National Basketball Association, Ackerman Law Attorney Alejandro Fernandez, Judge Virginia Hernandez-Covington, Magistrate Anthony E Porcelli, Attorney Richard Guerra, Attorney Nicole Fondura, Attorney Arthur Robert Weaver, Attorney Rafael Perez-Pineiro DBA Brickell IP Group PLLC, Chris Stavro, Ralph Schoenfelder DBA Axencis, Inc. Deborah Morales DBA Iconomy, Attorney Jessica Kramer, Attorney Joycelyn Brown, Attorney David Andrew Lockton, Attorney Stephen Milbrath, Attorney Geoffrey Lottenberg, and Etsy, Inc. who conspired to act directly or Indirectly, and who

4

were employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

433. The acts set forth above constitute a pattern of racketeering activity pursuant to **RICO § 18 U.S. Code 1962(c).**

434. The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of **RICO § 18 U.S. Code 1962(c).**

### **COUNT IX – RICO § 18 U.S.C. 1503 OBSTRUCTION TO DENY RIGHTS**

506. The Count IX Defendants Judge Virginia Hernandez-Covington and Magistrate Anthony E. Porcelli's acts were ministerial without court jurisdiction and outside the authority of the court creating null and void orders with the intent to or conspire with the enterprise in fraudulent representation of unlawful ongoing litigation Count IX Defendants, Attorney Geoffrey Lottenberg, Attorney Jessica Kramer, Attorney Joycelyn Brown, Attorney Stephen Milbrath, Attorney David Andrew Lockton. Conspired with and acted in agreement with the enterprise to dismiss the defendant victim they allegedly represented WITHOUT prejudice to deny the remaining defendant victims the procedural due rights to appellate review now barred under the finality doctrine as a result of Count IX Defendants actions.

507. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to **RICO §18 U.S.C 1503 OBSTRUCTION TO DENY RIGHTS.**

508. The Count IX Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of **RICO §18 U.S.C 1503   OBSTRUCTION   TO DENY RIGHTS.**

Ms. Kramer is named in Counts I and IX. The allegations of these Counts are essentially that Ms. Kramer successfully represented her client in the Middle District of Florida Case in a manner that interfered with the Puckett's ability to appeal a non-final order of dismissal. The Complaint fails to allege that Ms. Kramer took any direct action adverse to the Pucketts, or specifically committed any RICO predicate acts. Instead, the Pucketts allege that they were unable to pursue an appeal or other alleged rights against the plaintiff in the Middle District of Florida Case because Ms. Kramer was successful in obtaining a dismissal of <u>her</u> client. The Pucketts' Complaint fails to plausibly allege how Ms. Kramer's successful defense of her client constituted predicate acts under RICO.

## Facts

Ms. Kramer has no personal, business, or other contacts with the State of Tennessee. Kramer Declaration at ¶¶ 6-10. She does not own property in the state, does not practice law in Tennessee, and does not conduct any other activity in the State of Tennessee. *Id.* She did not represent the Pucketts or meet with them in Tennessee. *Id. at* ¶¶ 5, 10. As discussed in her Declaration, Ms. Kramer had very little contact with the Pucketts, and all of it related to litigation activities in the Middle District of Florida Case. *Id. at* ¶ 11. As she states in her Declaration:

6

11. My only communications with the Pucketts were related to the representation of HOFSM in the Middle District of Florida Case. For example, I participated in a case management conference by phone with the plaintiff and the Pucketts on August 20, 2021. As a result, we filed a Case Management Report. See Exhibit A, attached. The subject Case Management Reports states in part as follows:

**STATEMENT OF PARTIES' CASE MANAGEMENT POSITIONS**

**For Plaintiff:**

Plaintiff's position is stated in its Motion to Dismiss Counter-Plaintiff Hall of Fame Sports Memorabilia, Inc.'s Counterclaim (ECF No. 152), and in Plaintiff's Motion to Dismiss (ECF No. 162). Plaintiff does not oppose a stay of the present proceedings pending the Court's resolution of HOFSM's and Plaintiff's dispute regarding the settlement agreement from their prior action, nor does Plaintiff oppose a stay of the proceedings pending Puckett's claimed appeal. However, should the court be inclined not to stay the current proceedings, Plaintiff proposes the dates set forth herein.

**For Defendant HOFSM:**

HOFSM submits that its dispute with Plaintiff should be severed from Plaintiff's case against Defendant Puckett. There is no relationship between HOFSM and Puckett, Plaintiff's claims against each Defendant are unrelated to its claims against the other, and the disputes between Plaintiff and each Defendant appear to be proceeding on materially different paths. HOFSM is prepared to seek such a severance through motion practice if necessary.

As for its dispute with Plaintiff, HOFSM has pled

7

>counterclaims against Plaintiff seeking to enforce a settlement agreement between the parties that clearly bars Plaintiff from proceeding with its asserted claims against HOFSM in this suit. Plaintiff has moved to dismiss HOFSM's counterclaims or, in the alternative, for summary judgment on those counterclaims. (Doc. No. 152.) HOFSM agrees that its counterclaims are ripe for summary adjudication, and is cross-moving for such relief accordingly. HOFSM accordingly submits that, in the interest of efficient and effective case administration, discovery in connection with the dispute between Plaintiff and HOFSM should be stayed pending the Court's disposition of the parties' cross-motions for judgment on HOFSM's counterclaims. If HOFSM prevails on its counterclaims, Plaintiff's claims against HOFSM will be dismissed with prejudice, and all that will remain is an accounting of the damages owed by Plaintiff to HOFSM. Even if Plaintiff were to prevail in its motion to dismiss HOFSM's counterclaims, the issues in dispute and scope of discovery would be narrowed and the case could proceed more expeditiously.
>
>For purposes of this report, HOFSM has accordingly proposed case management deadlines to follow entry of judgment on its counterclaims, in the event that further proceedings are needed.
>
>**For Defendant Puckett:**
>
>Puckett has prepared a notice of exemption pursuant to Local Rules of Court 3.02(d)(9) as the proceeding has now become ancillary to the proceeding now pending in the eleventh circuit court of appeals.

*Id. at* ¶ 11. The Case Management Report accurately reflects that Ms. Kramer's client was asserting its rights against the plaintiff, not against the Pucketts. The Pucketts have now taken the extreme, irrational, and implausible position that Ms. Kramer violated RICO by successfully obtaining a dismissal of <u>her</u> client in the Middle District of Florida Case.

8

**Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiffs bear the burden of establishing personal jurisdiction over the defendant. *Johnson v. Griffin,* 85 F. 4th 429 (6th Cir. 2023); *Peters Broadcast Eng., Inc.*, 40 F. 4th 432 (6th Cir. 2022); *Sledge v. Indico System Resources, Inc.*, 68 F. Supp. 3d 834 (W.D. Tenn. 2014). Plaintiffs may not stand on their pleading but must make a prima facia showing with specific facts demonstrating that the Court has jurisdiction. *See Sledge v. Indico System Resources, Inc.*, 68 F. Supp. 3d 834 (W.D. Tenn. 2014). In this case, Plaintiffs appear to allege diversity jurisdiction, as well as federal question jurisdiction. Complaint at ¶27. In a diversity action, the exercise of personal jurisdiction over an out-of-state defendant "is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Because the jurisdictional limits of the Tennessee long-arm statute allow jurisdiction to the limits of the Due Process Clause, *State of Tennessee v. NV Sumatra Tobacco Trading Co*., 403 S.W.3d 726, 741 (Tenn. 2013), the Court need only determine whether exercising personal jurisdiction violates constitutional due process. *Johnson v. Griffin,* 85 F. 4th 429 (6th Cir. 2023).

Due process requires that the defendant have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). "The 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). The critical question "is whether 'the defendant's conduct and connection with the forum state are such that [s]he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz.*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Pucketts also assert personal jurisdiction under the federal RICO statute, 18 U.S.C. § 1961 et seq. Section 1965 provides in part as follows:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

The Sixth Circuit thoroughly reviewed the jurisprudence of 18 U.S.C. §1965 in *Peters Broadcast Eng., Inc. v. 24 Capital, LLC*, 40 F. 4th 432, 440 (6th Cir. 2022). After conducting this review, the Sixth Circuit established the following approach for determining personal jurisdiction under RICO:

> We find the reasoning of the forum-state approach persuasive, with a few clarification to ensure meaning is conferred upon each subsection of the statute. First we make sure that U.S.C. § 1965(a) provides for *venue,* not jurisdiction. Because subsection (a) is not jurisdictional, another rule – such as Federal Rule of Civil Procedure 4(k)(1)(A) and the relevant state's long-arm statute – is required to establish personal jurisdiction over an initial defendant. Then, U.S.C. § 1965(b) extends personal jurisdiction through nationwide service of process over "other parties residing in any other district," as long as venue is proper through (a) with that initial defendant and the "ends of justice" require it.

A recent case has summarized the Sixth Circuit test. *Anthony v. Van Over,* 2023 WL 6307960 (E.D. Tenn. Sept 27, 2023). The Sixth Circuit allows personal jurisdiction pursuant to 18 U.S.C. § 1965(b) when: "(1) the Court has personal jurisdiction over at least one initial defendant pursuant to the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment, (2) venue is proper, and (3) the 'ends of justice' are satisfied." *Id. at *2.* The Sixth Circuit takes a flexible approach to the "ends of justice" requirement. One factor to consider is whether the suit can be brought in another jurisdiction in which the nonresident defendants can be joined. The convenience of the parties is also taken into consideration as well as judicial economy. Venue is typically only appropriate if the defendant resides in the district, a substantial part of the alleged events occurred in the district, or a substantial part of the property at issue is located in the district. 28 USC § 1391.

In addition, dismissal under Rule 12(b)(6) is appropriate if Plaintiffs have

11

failed to plausibly allege RICO predicate acts as part of an unlawful enterprise that proximately caused injury to Plaintiffs. *See, e.g., Grow Michigan, LLC v. LT Lender, LLC*, 50 F. 4th 587 (6th Cir. 2022).

## Legal Argument

### I. THE COURT LACKS PERSONAL JURISDICTION OVER MS. KRAMER.

Defendant Jessica Kramer lacks sufficient minimum contacts with the State of Tennessee to support personal jurisdiction. The only factual basis alleged for jurisdiction over Ms. Kramer is Ms. Kramer's legal representation of her client HOFSM in the U.S. District Court in the Middle District of Florida Case. Plaintiffs assert, without any showing, that the legal representation of a co-defendant in the Middle District of Florida Case somehow qualifies for jurisdiction under RICO. Such activity does not support personal jurisdiction in Tennessee under any theory. Accordingly, the Complaint should be dismissed.

### A. **Plaintiffs Cannot Establish General Personal Jurisdiction.**

Depending on the type of contacts in a case, personal jurisdiction may be either general or specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,* 137 S. Ct. 1773, 1779-80 (2017). General jurisdiction exists over a defendant when her "'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Miller*, 694 F.3d at 678

(quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Plaintiffs do not and cannot allege facts supporting general jurisdiction over Ms. Kramer. As conceded by Plaintiffs, Ms. Kramer is a resident of Florida, not Tennessee. Ms. Kramer's Declaration makes it abundantly clear that she does not have continuous and systematic contacts with the State of Tennessee.

### B. **Plaintiffs Cannot Establish Specific Personal Jurisdiction.**

In order to establish specific personal jurisdiction, a defendant must purposely avail herself of meaningful activities in the forum state related to the alleged claims. *Sledge v. Indico System Resources, Inc.*, 68 F. Supp. 3d 834 (W.D. Tenn. 2014). This requirement "ensures that the defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Calphalon Corp.*, 228 F.3d at 721-722 (internal quotation marks omitted, citing *Burger King Corp.*, 471 U.S. at 474-75). Purposeful availment is satisfied only when the defendant's contacts with the forum "proximately result from actions by the defendant [herself] that create a substantial connection with the forum State" related to Plaintiffs' claims. *Burger King Corp.*, 471 U.S. at 474 (emphasis in original, quotation marks omitted); *accord Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).

Plaintiff's conclusory allegations in support of specific jurisdiction are insufficient. Plaintiffs concede that all of Mr. Kramer's alleged activities occurred in the Middle District of Florida Case. Purposeful availment is not satisfied merely

13

because Ms. Kramer may have had knowledge that Plaintiffs reside in Tennessee. *See Neogen Corp. v. Vicam*, 1997 WL 481021, at *5 (W.D. Mich. Feb. 20, 1997) ("If a defendant may be brought within the jurisdiction of the court simply by knowledge of where plaintiff resides at the time a tortious act is committed, there can be little remaining meaning to the requirement of purposeful conduct or of 'substantial connection' to the forum."). Ms. Kramer did not purposefully avail herself of the privilege of conducting activities within Tennessee, and the exercise of jurisdiction over her under these circumstances would violate due process. Plaintiffs' attempts to establish personal jurisdiction over Ms. Kramer are futile, and the Complaint should be dismissed.

### C. **Plaintiffs Cannot Establish Jurisdiction Based on an Alleged RICO Conspiracy.**

Plaintiffs have failed to establish personal jurisdiction under 18 U.S.C. §1965(a). Ms. Kramer is not a party who "resides, is found, has an agent, or transacts [her] affairs" in the State of Tennessee. Even if such jurisdiction may be found with respect to another defendant, (which is disputed), personal jurisdiction over Ms. Kramer would not be proper under 18 U.S.C. §1965(b). This section allows joinder only when "it is shown that the ends of justice require that other parties residing in any other district be brought before the court." In this case, the "ends of justice" compel dismissal of the complaint against Ms. Kramer. *Anthony v. Van Over*, 2023 WL 6307960 (E.D. Tenn., Sept. 27, 2023).

In this case, Plaintiffs cannot show that the Western District of Tennessee is the only available (or appropriate) forum for this case. To the contrary, all the alleged activity of the defendants supposedly occurred in the Middle District of Florida Case. The Western District of Tennessee is an extremely inconvenient forum chosen by Plaintiffs. It would be prejudicial to require Ms. Kramer to litigate this case in a distant forum unconnected with her residence, job, or legal responsibilities to her clients. It is also inconvenient and prejudicial for witnesses and documents located in Florida, such as Ms. Kramer's fellow attorneys and other witnesses related to the Middle District of Florida Case.

### D.  Venue is Improper.

In this case, Ms. Kramer does not reside in the district and did not engage in any acts in the district. While the Pucketts allege that their property was affected in the district, there is no allegation that Ms. Kramer took any action involving their property. In reality, this case centers on alleged acts in the Middle District of Florida Case.

### I. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A RICO VIOLATION.

The Complaint represents a gross misuse of the RICO statute by Plaintiffs. RICO requires illegal predicate offenses committed in the furtherance of a criminal enterprise. *General Motors, LLC v. FCA US, LLC.*, 44 F. 4th 548 (6th Cir. 2022); *Grow Michigan, LLC v. LT Lender, LLC*, 50 F. 4th 587 (6th Cir. 2022); *Bachi-Reffitt*

15

*v. Reffitt*, 802 Fed. Appx 913 (6th Cir. 2020); *Collier v. Logiudice,* 818 Fed. Appx. 506 (6th Cir. 2020).  No such acts are plausibly alleged with respect to Ms. Kramer.  The Complaint simply repeats conclusory assertions of a RICO enterprise without plausible allegations of illegal conduct by Ms. Kramer.  A fair reading of the Complaint demonstrates that Ms. Kramer's actions were proper as well as protected by the litigation privilege.  This further supports dismissal under 18 U.S.C. §1965(b).  In this case, the ends of justice do not require this Court to exercise personal jurisdiction over Ms. Kramer when there is no plausible RICO claim against her.

RICO requires Plaintiffs to allege specific predicate acts and to establish proximate cause. *Id.* RICO claims will be dismissed if the causation is "too attenuated." *General Motors*, 44 F. 4th at 562.  In this case, Plaintiffs have failed to allege specific predicate acts related to Ms. Kramer.   In a recent case involving vague and sprawling allegations, the court dismissed RICO claims for a lack of personal jurisdiction, finding that there was no basis for the RICO allegations: "in the entirety of their 191 page Amended Complaint, Plaintiffs never specifically allege any single act of racketeering engaged in by [defendant]."  *Anthony v. Van Over,* 2023 WL 6307960 (E.D. Tenn., Sept 27, 2023).  "Having failed to allege any relevant fraudulent conduct with respect to [defendant]…, it is difficult to understand

16

how Plaintiffs can claim [defendant] is part of the alleged RICO scheme…." *Id.* The same is true in this case.

In addition, any assertion of proximate cause is "too attenuated" in this case. *General Motors,* 44 F. 4th at 562. Plaintiffs have failed to plausibly allege that Ms. Kramer's admirable defense of her client was the proximate cause of Plaintiffs' alleged injury. Accordingly, the Complaint should be dismissed.

The Pucketts also allege that Ms. Kramer acted to obstruct or deny their rights in the Middle District of Florida Case. As discussed, this allegation is implausible because all Ms. Kramer is alleged to have done is successfully represent her client. In addition, there is no private right of action for an alleged violation of 18 U.S.C. §1503. *See Scherer v. United States,* 241 F. Supp. 2d 1270 (D. Kan. 2003).

## Conclusion

For the reasons stated, the Complaint against Ms. Kramer should be dismissed.

HOLLAND & KNIGHT LLP

/s/ Anna G. Rasmussen
Anna G. Rasmussen
Tennessee Bar No. 037733
anna.rasmussen@hklaw.com
511 Union Street, Suite 2700

        Nashville, TN 37211
        Telephone: (615) 850-8619

        Charles Wachter (*Pro Hac Vice Application Forthcoming*)
        Florida Bar No. 509418
        charles.wachter@hklaw.com
        100 N. Tampa Street, Suite 4100
        Tampa, FL  33602-3644
        Telephone: (813) 227-8500

        *Attorneys for Defendant Jessica Kramer*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed using the Court's ECF System and has been served via first-class United States Mail, postage prepaid, and via electronic mail this 28th day of November 2023, upon Plaintiffs and addressed as follows:

Carl Puckett
Marcella Puckett
2170 Old Gardner Road
Martin, TN 38237
Email: xfilesxfilesfan@yahoo.com
Pro Se Plaintiffs

                              /s/ Anna G. Rasmussen

#233615908_v17