UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

JACKSON  DIV

CASE NO.: 1:23-cv-001143

PUCKETT ET., AL.

PLAINTIFFS                                              **JURY DEMAND**

V.                                                          **FIRST AMENDED**  COMPLAINT

 Kareem ABdul Jabbar ET., AL      FOR DAMAGES AND <u>INJUNCTIVE</u>

                                                         RELIEF FOR VIOLATIONS OF THE
                                                         **FEDERAL RACKETEER INFLUENCED
                                                         AND CRIME ORGANIZATIONS ACT**


DEFENDANTS.

---

OPPOSITION TO  DEFENDANT AXENCIS INC.'S MOTION TO DISMISS AND
               REQUEST FOR LEAVE TO AMEND

---

   Plaintiffs Carl Puckett "Pro-Se" and Marcella Puckett " Pro-Se"   respectfully move the

court to deny  defendant Etsy, Inc."'s Motion to Dismiss the complaint  pursuant to Federal Rule

of Civil Procedure 12(b)(6).

INTRODUCTION

   Defendant Axencis is incorrect and misportrayed the narrative of the Plaintiff's complaint.

Axencis states "The core of Plaintiffs' pro se complaint is Plaintiffs' dissatisfaction with rulings

made in a case in the Middle District of Florida ("MD Fla.")." The core of the Plaintiff's

complaint is that there is an ongoing RICO operating within our judicial system, through misuse

1

and abuse of the judicial process,wire fraud,extortionate threats unlawfully interfering with those

engaged in lawful interstate commerce with open continuity continuing their operation up to and

including the date of this filing. Plaintiff's just happened to be a victim of this unlawful RICO

that enacted the scheme against them in a court without complete jurisdiction through fraud

upon the court and fraudulently manufactured alleged evidence in order to hold the Plaintiff's

lawful business hostage while making their extortionate threats. The Plaintiffs have no recourse

in the (M.D. Fla) court because it remains without complete jurisdiction and a bill of review is

pending before the 11th circuit to vacate all orders as a result (23-13380 and 23-12267 11th cir.

App Ct.)..Defendant Axencis, Inc then complains about being joined with lawyers and judges in

this action as a basis for attacking the Plaintiff's complaint. Plaintiff's complaint however, cites

the Reeves standard precedent developed by the U.S. Supreme court in acknowledging that

attorneys are not above the law and just as capable of committing RICO violations (see Compl.

Reves v. Ernst & Young, 507 U.S. 170 (1993)). Defendant Axencis, Inc. also attacks the

plaintiff's complaint for listing judges involved, however like the Supreme Court in Reeves,

Congress acknowledged that judges being human also were capable of committing RICO

violations and as a result developed the Hobbs Act Legislation and recognizing the sol exception

to the complete immunity doctrine is when the actions are without complete jurisdiction as

detailed in the Plaintiff's complaint (Id).Defendant Axencis, Inc. then asserts that "Plaintiffs

knowingly improperly filed an Amended Complaint without leave of the Court" however if such

filing was improper it was not knowingly as Plaintiffs had set forth in their opposition to

2

Defendant Etsy's motion to dismiss stating the following " The Pro-Se Plaintiffs were confused

regarding the filing of their first amended complaint after viewing some case law which

indicated the proposed amended complaint had been filed with the motion for leave to amend

that the Plaintiffs had already filed. So the Plaintiffs, while not done with their amendments filed

it with the belief it was to be filed with the motion. "Pro- Se' Plaintiffs were also confused in

that the rules permit the filing of an amended complaint without leave and without consent once

as a matter of course in response to a motion to dismiss if no answer has yet been filed. Pro-Se

Plaintiffs request the court grant the Plaintiffs leave to finish their amended complaint to be filed

as a second amended complaint. SImilar rulings have granted such request when plaintiffs have

filed their motion to amend while the case was still at the pleadings stage and in response to a

Rule 12(b)(6) motion to dismiss as the established principle as the purpose of the pleading is to

facilitate a proper decision on the merits, see Shumway v Shree Shastriji, LLC, case

1:21-cv-01058-STA-jay document 19 Filed 08/30/21 (W.D. Tenn.). Plaintiffs had recently sent

notice to defendants of their intent to file a renewed motion for appointment of counsel to which

Axencis, Inc.has solely and adamantly opposed.

      Defendant Axencis, Inc continues to assert in its motion introduction that ":at best,

Plaintiffs claims arise out of activity in Florida rather than in this District or in Tennessee in

general."Plaintiff's complaint states facts setting forth Ain Jeem, Inc;s conspiracy in the

hiring/retaining of Axencis, Inc to make false claims against Plaintiff's engaged in lawful

interstate commerce and their store domiciled here in Tennessee, and that Axencis, Inc acts

specifically targeted the Plaintiffs and their business here in Tennessee. The facts of the

complaint further explain that the predicate racketeering acts occurred via wire between Ain

Jeem, Inc and Deborah Morales who were in California with Axencis, Inc,c incorporated in

Delaware over a phone number registered to a location in the state of New York. Axencis, Inc.,

once it fraudulently manufactured what it labeled as evidentiary screenshots from its acts that

specifically targeted the Plaintiff's business it knew was located here in Tennessee and within

this district, then sent back through wire to Ain Jeem and Deborah Morales in the State of

California, where Ain Jeem and Deborah Morales then fraudulently through sent back through

wire to Axencis, Inc., either in Delaware or New York, the fraudulent verification that the

Plaintiff's legitimate and lawfully owned collectible within the definition of IRS code 408 was

counterfeit and unauthorized also based upon a fraudulent trademark claim. Axencis, Inc.

through wire then sent the fraudulently manufactured alleged evidentiary screenshots to its

RICO co-defendant legal services firm Brickell IP Group PLLC in the Southern District of

Florida in Miami. The unlawful seizure and freeze of the Plaintiff's confidential account records

and financial accounts occurred via wire between the enterprises Axencis, Inc.  from either its

Delaware or New York Location, and its legal services firms Brickell IP Group PLLC located in

the Southern District of Miami Florida and AKerman Law located within the middle District of

Florida and co-defendants Etsy, Inc located in New York and PayPal Holdings, Inc located in

California. The unlawful "take down" of the Plaintiff's store occurred here in Tennessee where

the Plaintiff's store is domiciled from actions taken by Etsy, Inc. in New York in furtherance of

the RICO operation. The reselling of the fraudulently obtained items from these actions

involving the CEO of Axencis, Inc. Ralph Scheonfelder from Cyprus and a shipping location in

the Southern District of Florida then forwarded to California where AIn Jeem would either relist

items in his www.shopkareemabduljabbar as his own authentic items or then send some for

consignment retail to his co-defendant NBA in New York. Defendant Axencis, Inc is mistaken

in its faulty narrative of the Plaintiff's complaint that instead sets forth in specific detail the

majority of the predicate racketeering acts took place in diversity jurisdiction and even a Florida

district both middle and southern would not have jurisdiction over all defendants. Axencis, itself

testified none of its activities took place in Florida.

**MEMORANDUM**

Defendant Axencis argues that Plaintiffs have failed to satisfy the requirement of "at least one

defendant with traditional forum state contacts." Peters Broad. Eng'g, Inc., 40 F.4th at 441 (6th

Cir. 2022).""The Sixth Circuit has held "that 18 U.S.C. § 1965(b) governs service over out-of

district defendants and requires that at least one defendant has minimum contacts with the forum

state". Peters Broad. Eng'g, Inc. v. 24 Capital, LLC, 40 F.4th 432, 435 (6th Cir. 2022). Plaintiffs

have already established this courts jurisdiction over co-defendant Etsy, Inc and others in (EFC

15). Additionally, this court has jurisdiction over Axencis, INc under the minimum contacts

standard as Axencis, Inc conducts its affairs via use of the internet and specifically targeted its

actions against the PLaintiff's domiciled here in Tennessee and that its actions give rise to the

claims within Plaintiffs complaint.See AlixPartners, LLP v. Brewington, 836 F.3d 543, 549-50

(6th Cir. 2016) (emphasis omitted) (quoting Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,

503 F.3d 544, 550 (6th Cir. 2007))

**I- THE INTERNET AND JURISDICTION**

In *Hanson v. Denckla,* the Supreme Court noted that "[a]s technological progress has

increased the flow of commerce between States, the need for jurisdiction has undergone a similar

increase." *Hanson v. Denckla,* 357 U.S. 235, 250-51, 78 S. Ct. 1228, 1237-39, 2 L. Ed. 2d 1283

(1958). Twenty seven years later, the Court observed that jurisdiction could not be avoided

"merely because the defendant did not *physically* enter the forum state." *Burger King,* 471 U.S.

at 476, 105 S. Ct. at 2184. The Court observed that: *"[I]t is an inescapable fact of modern*

*commercial life that a substantial amount of commercial business is transacted solely by mail*

*and wire communications across state lines, thus obviating the need for physical presence within*

*a State in which business is conducted." "If the defendant enters into contracts with residents of*

*a foreign jurisdiction that involve the knowing and repeated transmission of computer files over*

*the Internet, personal jurisdiction is proper. E.g. CompuServe, Inc. v. Patterson, 89 F.3d 1257*

*(6th Cir.1996). when an entity intentionally reaches beyond its boundaries to conduct business,*

*the exercise of specific jurisdiction is proper. Burger King, 471 U.S. at 475, 105 S. Ct. at*

*2183-84. Different results should not be reached simply because business is conducted over the*

*Internet. In CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996), the Sixth Circuit*

*addressed the significance of doing business over the Internet.Determining the extent of a State's*

*judicial power over persons outside of its borders under the International Shoe standard can be*

*undertaken through two different approaches — by finding specific jurisdiction <u>based on conduct</u>*

*<u>connected to the suit</u> or by finding general jurisdiction. See Helicopteros Nacionales de*

*Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); If the*

*defendant's contacts with the State are also the basis for the suit, those contacts may establish*

*specific jurisdiction. In determining specific jurisdiction, we consider (1) the extent to which the*

*defendant "purposefully avail [ed]" itself of the privilege of conducting activities in the State; (2)*

*whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether*

*the exercise of personal jurisdiction would be constitutionally "reasonable." See Christian*

*Science Bd., 259 F.3d at 216; see also Helicopteros, 466 U.S. at 414 & n. 8, 104 S. Ct. 1868*

*<u>(describing a basis for jurisdiction where "a controversy is related to or `arises out of a</u>*

*<u>defendant's contacts with the forum")</u>.. See Hanson, 357 U.S. at 250-51, 78 S. Ct. 1228 (noting*

*that "it is a mistake to assume that [the technological] trend heralds the demise of all*

*restrictions"). But even under the limitations articulated in International Shoe and retained by*

*Hanson, the argument could still be made that the Internet's electronic signals are surrogates for*

*the person and that Internet users conceptually enter a State to the extent that they send their*

*electronic signals into the State, establishing those minimum contacts sufficient to subject the*

*sending person to personal jurisdiction in the State where the signals are received. Under this*

*argument, the electronic transmissions "symbolize those activities ... within the state which*

*courts will deem to be sufficient to satisfy the demands of due process." Int'l Shoe, 326 U.S. at*

*316-17, 66 S. Ct. 154. an out-of-state citizen, through electronic contacts, has conceptually*

*"entered" the State via the Internet for jurisdictional purposes. Such principles are necessary to*

*recognize that a State does have limited judicial authority over out-of-state persons who use the*

*Internet to contact persons within the State. Drawing on the requirements for establishing*

*specific jurisdiction, see Helicopteros, 466 U.S. at 414 & n. 8, 104 S. Ct. 1868, which requires*

*purposeful conduct directed at the State and that the plaintiff's claims arise from the purposeful*

*conduct, we adopt today the model developed in Zippo Manufacturing Co. v. Zippo Dot Com,*

*Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).Thus, adopting and adapting the Zippo model, we*

*conclude that a State may, consistent with due process, exercise judicial power over a person*

*outside of the State when that person (1) directs electronic activity into the State, (2) with the*

*manifested intent of engaging in business or other interactions within the State, and (3) that*

*activity creates, in a person within the State, a potential cause of action cognizable in the State's courtsThis standard for reconciling contacts through electronic media with standard due process principles is not dissimilar to that applied by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)."* The Plaintiffs have established that this court does have jurisdiction over defendant Axencis, Inc and its motion to dismiss for lack of jurisdiction and improper venue should therefore be denied.

## II- PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED AGAINST AXENCIS, INC FOR INEFFECTIVE SERVICE.

On 9/25/23 Plaintiff;s filed a Motion for extension of time for service of summons with exhibits attached thereto (EFC 21). One of the defendants named within the Motion was Axencis, Inc (Id). The Motion made a showing that the location given by Axencis, Inc came back undeliverable and the Plaintiff;s subsequently learned the sole contact point for Axencis, Inc is a virtual office registered representative to who they immediately resent the summons out to be served which took an additional 10 days past the 90 days permitted by statute. Plaintiffs request the court to grant their pending motion and based upon the facts therein of Plaintiffs efforts and due to no fault of their own the court deem proper service upon Axencis, Inc. as the plaintiff was diligent in correcting the service deficiencies, Jones v. Ramos, 12 F.4th 745, 749 (7th Cir. 2021),cited in United States v. Oakland Physicians Medical Center, LLC, No. 22-1011 (6th Cir. 2022) and the plaintiff is a pro se litigant deserving of additional latitude to correct defects in the service of process, Kurka v. Iowa County, 628 F.3d 953, 958 (8th Cir. 2010)cited In United States v. Oakland Physicians Medical Center, LLC, No. 22-1011 (6th Cir. 2022). In a five factor test in making the the decision within the court's discretion some factors include; (1) whether an extension of time would be well beyond the timely service of process; 10 days does not constitute a time well-beyond a timely service of summons the Plaintiffs filed their motion for extension of time for service of summons prior to the expiration of the 90 days upon discovery difficulties beyond their control as to Axencis, Inc. Defendant does not argue that the

extension of time would prejudice the defendant other than the inherent prejudice in having to

defend the suit and Plaintiff would have the alternative of reissuance of process available  motion

for enlargement of time to issue new process pursuant to Rule 6.02 of the Tennessee Rules of

Civil Procedure." The defendant had notice of the action in July 2023 when served with a request

for waiver of service of summons which it refused. Plaintiffs request that if the court not grant

their motion on showing of good cause that in the alternative issue a reissuance of process as to

defendant Axencis, Inc.

### III - DEFENDANT AXENCIS INC ARGUMENT THAT THE LIVE PLEADING IS NOT THE PLAINTIFFS CORRECTED FIRST AMENDED COMPLAINT BUT PLAINTIFF'S ORIGINAL COMPLAINT IS A MATTER FOR THE COURT TO DECIDE

**As Plaintiffs stated in the beginning of their pleading** " The Pro-Se Plaintiffs were confused

regarding the filing of their first amended complaint after viewing some case law which

indicated the proposed amended complaint had been filed with the motion for leave to amend

that the Plaintiffs had already filed. So the Plaintiffs, while not done with their amendments filed

it with the belief it was to be filed with the motion. "Pro- Se' Plaintiffs were also confused in

that the rules permit the filing of an amended complaint without leave and without consent once

as a matter of course in response to a motion to dismiss if no answer has yet been filed. Pro-Se

Plaintiffs request the court grant the Plaintiffs leave to finish their amended complaint to be filed

as a second amended complaint. SImilar rulings have granted such request when plaintiffs have

filed their motion to amend while the case was still at the pleadings stage and in response to a

Rule 12(b)(6) motion to dismiss as the established principle as the purpose of the pleading is to

facilitate a proper decision on the merits, see Shumway v Shree Shastriji, LLC, case

1:21-cv-01058-STA-jay document 19 Filed 08/30/21 (W.D. Tenn.). U.S. Attorney Calkins

representing defendant Judge Porcelli submitted that "Moreover, Plaintiffs previously filed two motions for leave to amend the complaint. Pls.' Emergency Mot.for Leave to Amend the Compl., RE 13, PageID 612-27; Pls.' Mot. for Joinder of RecentlyIdentified Doe Defs. and Mot. for Leave to Amend, RE 65, PageID 1325-33 (seeking leave to amend under Rule 15(a)(2)). The Court has not yet ruled on these motions.Because Plaintiffs filed the Amended Complaint on December 4, 2023, the Amended Complaintsuperseded the original complaint and became the operative pleading in this case. On December 5, 2023, Plaintiffs filed the CAC, which superseded the original amended complaint and became this case's operative pleading. RE 77, PageID 1877-2175. As Plaintiffs represented in their cover letter, this corrected amended complaint "include[s] the exhibits" referenced in the original Amended Complaint but otherwise appears substantively identical to the original complaint. RE77-3, PageID 2351U.S. Attorney Calkins (Tenn. BPR # 030093) acknowledging it to be a matter for the court to decide otherwise.

## IV. DEFENDANT AXENCIS, INC. DOES NOT PROVIDE A CONVINCING ARGUMENT THAT  PLAINTIFFS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM THAT SHOWS THE PLAUSIBILITY THAT AXENCIS, INC COMMITTED ANY RICO PREDICATE ACTS.

 In  Spadafore  v.  Gardner,  330  F.3d  849  (6th  Cir.  2003),  the court stated  the standard governing a conspiracy claim: *"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each  conspirator  need not  have  known all  of  the  details  of  the  illegal plan  or  all  of  the  participants  involved. All that must be shown is that there was a single plan, that the alleged co conspirator shared  in  the general conspiratorial objective, and that an overt act was committed in*

10

*furtherance of the conspiracy that caused injury to the complainant".* The Plaintiff's complaint

sets forth the detailed facts of the conspiracy between AIn Jeem and Axencis to create fraudulent

infringement reports falsely labeled evidence collection to initiate through a misuse and abuse of

the judicial process, a fraudulent action against those engaged in lawful interstate commerce.

Axencis, Inc's motion request dismissal for failure to state a claim under 18 U.S.C. 1028 by

selecting specific reference to a subsection (d)(3) specifically defining identification document

which is not required to be met when other Subsections (D)(1) pertaining to authentication

feature and (d)(2) defining false identification are met and factually detailed by the Plaintiffs see

attached (appendix M Exhibit 1). 18 U.S.C. 1028 (e) specifically states that "This section does

not prohibit any lawfully authorized investigative" But Axencis, Inc argues " at worse Axencis is

using an unregistered trademark and performed investigation work without a license. Not only

does their admission indicate they are not exempt from the provisions of 18 U.S.C. 1028 but

their intentional disregard for the law.  The National Institute of Standards and Technology

(NIST) is an agency of the US Department of Commerce.NIST is responsible for developing

information security standards and guidelines, including minimum requirements for federal

systems, but such standards and guidelines shall not apply to national security systems without

the express approval of appropriate federal officials exercising policy authority over such

systems.NIST Special Publication 800-63BE-commerce and e-business users who synchronize

the clocks of systems used to time stamp commercial and financial transactions. This class of

users also includes commercial applications similar to the function of a Notary Public or to the

Registered Mail and Return Receipt Requested services provided by the United States Postal

Service.Outline for SP 250-X (nist.gov). The fraudulently created false identification documents

by Axencis, Inc they labeled as "evidence collection reports" contain a fraudulently created

authentication stamp specifically designated as a (US Department of Commerce / NIST

authenticated timestamp) example below

**Collection Date**

Tue, 02 Feb 2021 10:16:22 UTC (US Department of Commerce / NIST authenticated timestamp)

Axencis, Inc. created the fraudulent authentication stamp to give the appearance of their

being a legitimate company registered with the Department of commerce for official use of the

authentication mark and then citing themselves as investigators of a company registered with the

department of commerce authorized to use the authentication mark for creating digital forensic

evidence in order to defraud not only plaintiffs but in many cases our federal judicial system

where foreign plaintiffs and foreign defendants do not have jurisdictional standing under the

Lanham Act. The official authentication time stamp issued for use to registered companies

appears as follows:

12

*Table 3.  The NIST Daytime Time Code Format.*

| JJJJJ YR-MO-DA HH:MM:SS TT L H msADV UTC(NIST) OTM |
|---|
| where: |
| JJJJJ is the Modified Julian Date (MJD). The MJD is the last five digits of the Julian Date, which is simply a count of the number of days since January 1, 4713 B.C. To get the Julian Date, add 2.4 million to the MJD. |
| YR-MO-DA is the date. It shows the last two digits of the year, the month, and the current day of month. |
| HH:MM:SS is the time in hours, minutes, and seconds. The time is always sent as Coordinated Universal Time (UTC). An offset needs to be applied to UTC to obtain local time. For example, Mountain Time in the U.S. is 7 hours behind UTC during Standard Time, and 6 hours behind UTC during Daylight Saving Time. |
| TT is a two-digit code (00 to 99) that indicates whether the United States is on Standard Time (ST) or Daylight Saving Time (DST). It also indicates when ST or DST is approaching. This code is set to 00 when ST is in effect, or to 50 when DST is in effect. During the month in which the time change actually occurs, this number will decrement every day until the change occurs. For example, during the month of October, the U.S. changes from DST to ST. On October 1, the number will change from 50 to the actual number of days until the time change. It will decrement by 1 every day until the change occurs at 2 a.m. local time when the value is 1. Likewise, the spring change is at 2 a.m. local time when the value reaches 51. |
| L is a one-digit code that indicates whether a leap second will be added or subtracted at midnight on the last day of the current month. If the code is 0, no leap second will occur this month. If the code is 1, a positive leap second will be added at the end of the month. This means that the last minute of the month will contain 61 seconds instead of 60. If the code is 2, a second will be deleted on the last day of the month. Leap seconds occur at a rate of about one per year. They are used to correct for irregularity in the Earth's rotation. The correction is made just before midnight UTC (not local time). |
| H is a health digit that indicates the health of the server. If H=0, the server is healthly. If H=1, then the server is operating properly but its time may be in error by up to 5 s. This state should change to fully healthy within 10 minutes. If H=2, then the server is operating properly but its time is known to be wrong by more than 5 s. If H=3, then a hardware or software failure has occurred and the amount of the time error is unknown. |
| MsADV displays the number of milliseconds that NIST advances the time code to partially compensate for network delays. |
| The label UTC(NIST) is contained in every time code. It indicates that you are receiving Coordinated Universal Time (UTC) from the National Institute of Standards and Technology (NIST). |
| OTM (on-time marker) is an asterisk (*). The time values sent by the time code refer to the arrival time of the OTM. In other words, if the time code says it is 12:45:45, this means it is 12:45:45 when the OTM arrives. |

Outline for SP 250-X (nist.gov)

Axencis, Inc knew that the fraudulently created authentication mark they used for creating false

identification documents did not comply with The Federal Rules of evidence admission of an

electronic record or any other evidence, the proponent must show that it is authentic,

authentication requirements are "threshold preliminary standard[s] to test the reliability of the

Evidence, The standard for authenticating computer records is the same as for authenticating

other Records Federal Rule of Evidence 901(b) offers a non-exhaustive list of authentication

methods. Rule 901(b)(4) indicates that evidence can be authenticated based upon distinctive

characteristics such as "contents, substance, internal patterns, or other distinctive characteristics."

See United States v. Siddiqui, 235 F.3d 1318, 1322-23 (11th Cir. 2000) Print-outs of web pages,

even those bearing the URL and date stamp, are not self-authenticating. See In re

Homestore.com, Inc. Securities Lit., 347 F. Supp. 2d 769, 782-83 (C.D. Cal. 2004).

 Axencis, Inc then goes onto address the facts asserted in the Plaintiff's complaint stating" Ralph

Schoenfelder "secretly purchased the legitimate items" then intentionally misstates this same fact

in asserting  secretly purchasing documents is not a predicate crime knowing Plaintiffs never

asserted that anyone from Axencis was secretly purchasing documents and the assertion that

Plaintiffs facts set forth that " Ralph Schoenfelder "secretly purchased the legitimate items" is

merely a naked allegation is requesting this court to ignore the documented exhibits Plaintiffs

submitted proving their claims were not Naked allegations: *see (appendix b Exhibit 9). AGain,*

14

Axencis reiterates its argument that *" the documents Plaintiffs label as identification documents are not under 18 U.S.C. §1028(d)(3)"* however the fraudulent authentication applied in creating false identification documents violates all other sections and subsections of the statute and is deemed racketeering predicate acts (appendix M Exhibit 1).Axencis then argues that" Plaintiffs fail to make allegations sufficient for imposing liability of Axencis for the purported actions of Ralph Schoenfelder"and :*." The mere existence of a master-servant or employer-employee relationship is not a basis for imposing liability through a theory of respondeat superior"*. This argument too is misplaced since Ralph Schoenfelder is the CEO of Axencis see sworn declaration of Ralph Schoenfelder (Appendix M Exhibit 2), and (appendix K Exhibit 4 showing signed USPTO docs identifying Ralph Schoenfelder as the President of Axencis. Inc.). Ralph Schoennfelders wife Astrid Schoenfelder is the vice President of Axencis see (Appendix M Exhibit 3). This does not support Axencis, Inc theory of respondeat superior as stated.

Axencis then argues;

*"These allegations certainly do not meet the heightened requirements for pleading fraud of Rule 9(b). Notably, US law does not even require Axencis to register its mark before it can be used as a trademark. In the contrary, US law requires use before registration. "One of the bedrock principles of trademark law is that trademark ... ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market." Allard Enters., Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 356 (6th Cir. 1998) (quoting Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991) (internal quotations omitted))"*

15

U.S. trademark law does not apply to the foreign corporation Axencis, Inc headquartered in

the Country of Cypress (Appendix M Exhibit 5). The USPTO denied the foreign company use of

the trademark in part because they maintain no physical office in the U.S. as required by U.S.

Trademark law (Appendix K Exhibit 11). While they did obtain an incorporation in the state of

Delaware, they must also maintain a physical not virtual office location. As a foreign company

headquartered in Cyprus, they are subject to International Law under the Madrid Protocol to

which the U.S. is a signed member requiring them to first register a trademark with WIPO, and

then apply for an extension of coverage into the U.S. as set forth in The Code of Federal

Regulation (Appendix E Exhibit 6) governing foreign entities under U.S. Trademark Law in

compliance with the Madrid Protocol.  Secondly, the USPTO warned Axencis several times it

cannot advertise as a provider of legal services as it is not licensed to practice law regardless of

trademark (Appendix K Exhibit 15).

The Axencis motion is supported by a sworn declaration by an individual named Nathan

Kelley claimed to be an "officer" in Axencis, Inc. Mr. Kelley specifically states that *"Axencis is*

*not and never has been an employee of Ain Jeem (decl.7)."* The Black's Law dictionary defines

"retained" as "to **employ** by paying a retainer (Appendix M Exhibit 4). C0- defendant Deborah

Morales in sworn declaration stated that Ain Jeem "retained" Axencis, Inc (Appendix B Exhibit

14), and co-defendant Richard Guerra in a sworn declaration stated that Ain Jeem "retained"

Axencis, Inc (Appendix B Exhibit 15), and in information given to a Florida Investigator

16

co-defendant Richard Guerra stated that Axencis, Inc then retained Attorney Guerra to represent

them (Appendix M Exhibit 5). Co-defendant STephen Milbrath admitted knowing about the get

rich quick scheme and Axencis as a fraudulent company and rather than reporting it as required

by the Professional Rules of conduct merely told Plaintiff to "keep up the good work" (appendix

D Exhibits 7-9).

Plaintiffs have set forth facts showing open-continuity by the Axencis, Inc enterprise acting in

the same repeated RICO scheme on behalf of Animaccord in a most recent case in Hawaii

represented by Attorney Culpepper who is representing them here in this case.

   Plaintiffs assert that defendant Axencis, Inc motion must be denied and cannot be granted

upon the intentional misrepresentation of facts as they have set forth in their motion. Moreover

the Plaintiffs respectfully request the granting of their motion to extend time for service or in the

alternative order a reissuance of process for defendant Axencis, Inc. Additionally, Plaintiffs

request the court grant their motion for leave to file a second amended complaint so they can

finish the amendments that have not yet been submitted and that the order be based upon a

showing of good cause and in the interest of justice.


Respectfully Submitted,                                          Executed December 16th,2023



_____*Carl Puckett*_____

Plaintiff "Pro-Se"

___*Marcella Puckett*___

Plaintiff "Pro-Se"

## PROOF OF SERVICE

I Marcella Puckett, do hereby certify that on December 16th 2023 that the Foregoing Plaintiff's Opposition to Defendant Axencis Inc Motion to dismiss and  Appendix M of Exhibits including this certificate of service was emailed to Defendant Stephen D MIlbrath through his attorneys, hgwinn@grsm.com , amorgan@grsm.com , cwest@grsm.com , , pgonyer@grsm.com and to rguerra@brickellip.com., Etsy, Inc through their attorneys khansen@littler.com , pprather@littler.com  kculpepper@culpepperip.com, audrey.calkins@usdoj.gov, coleywu@yahoo.com , rweaver@brickellip.com,  anna.rasmussen@hklaw.com And rweaver@brickellip.com ,   gdubinsky@hsgllp.com  and a true and correct copy with prepaid postage attached thereto was then placed in the United States Mail in Martin Tennessee and addressed to

A.  Robert Weaver

Brickell IP Group PLLC

1101 Brickell Ave South Tower STE 800

Miami Florida 33131

I declare under penalty of perjury that the foregoing is true and correct Executed in

Martin Tennessee on this 16th day of December  2023.

_____

Marcella Puckett