## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

CARL PUCKETT
and
MARCELLA PUCKETT

      Plaintiffs,

v.                            No. 1:23-cv-01143-STA-jay

AIN JEEM, INC., et al

      Defendants.

---

## REPORT AND RECOMMENDATION

---

Before the Court are Plaintiffs' Complaint and Plaintiffs' First Amended Complaint raising claims brought pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act. ECF Nos. 1, 76. Pending before the Court are twelve Motions to Dismiss. ECF Nos. 10, 16, 26, 41, 71, 74, 75, 80, 85, 89, 106, 115. However, upon reviewing the Complaint the Court RECOMMENDS dismissing this case in its entirety sua sponte for lack of subject matter jurisdiction. The Court further RECOMMENDS DENYING all other pending Motions as MOOT.

### I. FACTUAL BACKGROUND

According to Plaintiffs' Complaint, a "Racketeer[] Influenced Crime Organization has taken over the judicial system in the area of [intellectual property] and trademark law." ECF No. 1 at 14. The civil conspiracy allegedly links together Kareem Abdul-Jabbar, the National Basketball Association (NBA), two federal judges, ten attorneys, several law firms, Ain Jeem, Inc. (and several of its employees), Etsy, Inc., and a couple of other corporate entities. ECF No. 1 at 3-

1

13.

Plaintiffs' Complaint is 172 pages in length. ECF No. 1. The Exhibits filed along with Plaintiffs' Complaint total 371 pages. ECF Nos. 1-1, 1-2. After reading the Complaint and its associated Exhibits, the basics of the alleged conspiracy are as follows.[1]

Plaintiffs owned and operated an online Etsy store. ECF No. 1 at 62-63. Using that platform, they attempted to sell, among other things, an item that may have been violative of trademark rights held by Ain Jeem, Inc., which the Court understands to be Mr. Abdul-Jabbar's corporate identity. ECF No. 1 at 3-4, 20, 50. The item "was a 1989 manufactured NBA trademarked collectible plate displaying an artistic image of Kareem Abdul[-]Jabbar and identifying the artist name along with the NBA trademark logo on the back . . . ." ECF No. 1 at 63. On June 1, 2021, Ain Jeem, Inc. sued Plaintiff Carl Puckett, along with many other online re-sellers, in the Middle District of Florida for trademark violations. ECF No. 1 at 73.

Plaintiffs' theory regarding the purpose behind this civil conspiracy is that "Kareem Abdul[-]Jabbar ha[s] squandered his entire NBA earnings in shady property investments." ECF No. 1 at 63. As such, he is pursuing claims against online re-sellers because it is "lucrative." ECF No. 1 at 62. The RICO operation allegedly began in earnest (at least as to Plaintiffs) when Abdul-Jabbar "and his manager Deborah Morales engaged . . . the services of the RICO firm

---

[1] The Court notes the length of the Complaint and its attached Exhibits to highlight that there is a *plethora* of allegations made within the documents. The Court will focus on the crux of the Complaint in its recitation of the factual background. In particular, it appears as though Plaintiffs attempt to establish that this type of scheme has happened before (or is currently happening) in other districts around the country. *See* n.4. Instead of diving into those potential issues, the Court will focus only on the alleged conspiracy as it relates to Plaintiffs without considering other court cases within which the alleged RICO enterprise has operated. See ECF No. 1 at 62 ("The RICO files the same pleadings and repeatedly enacts their operation in Federal District [C]ourt jurisdictions where their operations are successful.").

Brickell IP Group[,] PLLC . . . ."[2] ECF No. 1 at 65. Several of the named Attorney-Defendants

are (or were) members of this firm. ECF No. 1 at 65. From there, the services of Axencis were

retained to investigate alleged trademark infringements.[3] ECF No. 1 at 33, 66. According to

Plaintiffs, Abdul-Jabbar and his corporate identity of Ain Jeem, Inc., knew all but one of the

"trademarks had been dead, canceled or abandoned" as reported by the United States Patent and

Trademark Office. ECF No. 1 at 66. Regardless, the "search[es] of several online marketplace

platforms" revealed several instances of sellers using the Abdul-Jabbar likeness. ECF No. 1 at 66.

---

[2] Plaintiffs spilled a lot of ink reviewing various and sundry cases they allege Brickell IP Group has had meaningful participation in. Plaintiffs lay out what they believe to be a connection between "26 prominent law firms and [a]ttorneys," a "Russian Federation Company" that has apparently retained Brickell IP to represent it in litigation over a trademark for "Masha the Bear," and attempts to "tak[e] down numerous Chinese, U.S. and other Foreign online business where no U.S. jurisdiction exists." ECF No. 1 at 15-17. Included in their Exhibits is a map of what they believe to be the "[g]raph of interconnected RICO firms" operating in the United States. *See* ECF No. 1-1 at 4. These firms implicate trademark issues related not just to Russian-owned cartoon character Masha the Bear, but also a popularized meme character known as Grumpy Cat, a long list of Chinese companies, and companies located in Cyprus. ECF No. 1 at 20-30.



[3] The conspiracy within the conspiracy that Plaintiffs raise here is that the "RICO firms . . . enlist the services of various individuals willing to unlawfully impersonate and assert the title as Investigator . . . when none were in fact licensed investigators in the state where they claimed the access to the online stores took place . . . ." ECF No. 1 at 33. Plaintiffs include in their Exhibits alleged "reverse IP address check[s]" to show that the investigators involved in assisting Ain Jeem, Inc. with locating trademark infringements were not located where Plaintiffs believe they should have been located when conducting their investigations. ECF No. 1-1 at 97-100.

Plaintiffs complain that instead of reporting the allegedly violative items through the online platform, the investigators took screenshots. ECF No. 1 at 66, 68.

Armed with screenshots of products being sold—products the Plaintiffs say either were not subject to an active trademark protection or were validly being sold—Ain Jeem, Inc. decided to file a "shotgun" complaint. ECF No. 1 at 73.[4] The corporation named seventy-seven defendants, with Plaintiff Carl Puckett being one of them. ECF No. 1 at 73. Part of the proof Plaintiffs put forth that this scheme existed is that Ain Jeem, Inc. originally filed suit in the Southern District of Florida but "ran into a judicial roadblock" because the judge in that district denied Ain Jeem, Inc.'s request for a temporary restraining order (TRO). ECF No. 1 at 69. This, Plaintiffs contend, meant "the RICO pattern through an abuse of judicial process would not be enacted." ECF No. 1 at 69-70. As such, Ain Jeem, Inc. "filed for voluntary dismissal of their complaint" and looked elsewhere for a more RICO-friendly jurisdiction to file suit. ECF No. 1 at 70.

According to Plaintiffs, Attorney Guerra of Brickell IP Group "contacted his close personal friend he had gone to college with . . . ." ECF No. 1 at 70. That friend is Attorney Fernandez, "who himself served several years as an appellate court clerk, and now practiced in the Florida Middle District where he was close personal friends (as he shares on his [LinkedIn] social media) with Chief District [C]ourt Judge Virginia Hernandez-Covington . . . ." ECF No. 1 at 70. Plaintiffs appear to allege that because Ain Jeem, Inc. thought it would receive more favorable treatment there, the corporation re-filed in the Middle District, including Attorney Fernandez as "co-lead

---

[4] Plaintiffs raise issue with the manner in which the online sellers were joined for this lawsuit in Florida via what they refer to as a "shotgun" complaint. ECF No. 1 at 35. Part of the proof that they argue regarding the existence of this RICO operation is that such a complaint is unlawful under Eleventh Circuit precedent and therefore the allowance of it in the Middle District of Florida is evidence that the judges involved are corrupt. ECF No. 1 at 38-39.

counsel."[5] ECF No. 1 at 44, 70.

Plaintiffs go on to allege that "[b]ecause of the personal favors through friendships and now associations in aiding and abetting [the] RICO firm operation to proceed in the Florida Middle District Court, the RICO began filing repeated actions on behalf of its client . . . ." ECF No. 1 at 72. Plaintiffs' allegations are that because of the corrupt scheme, Ain Jeem, Inc. was able to obtain a TRO from Judge Hernandez-Covington that froze the accounts associated with the online sellers, as well as the funds associated with those accounts. ECF No. 1 at 39. The motion for a TRO was heard, according to Plaintiffs, "ex parte" because none of the defendants had yet been served. ECF No. 1 at 39. Then, Judge Hernandez-Covington allegedly approved an alternate form of service that denied defendants the ability to properly receive notice of the suit.[6] ECF No. 1 at 43-44.

The lawsuit was filed on June 1, 2021, and by mid-June 2021, Plaintiffs discovered their "online store was removed . . . from the internet merchant [p]latform of Etsy, Inc., which included a freeze of any income waiting to be deposited by Etsy, Inc. . . . ." ECF No. 1 at 43, 72.

Once the accounts were frozen, Plaintiffs allege that Ain Jeem, Inc.'s next maneuver in the RICO operation was to extort money from the online sellers by demanding an exorbitant sum to

---

[5] Plaintiffs also allege that "[w]hen [t]he RICO does locate a corruptible judge willing to aid in the furtherance of the unlawful operations interfering with those engaged in interstate commerce, they open new offices in that district in furtherance of their operation . . . ." ECF No. 1 at 53. The Exhibit Plaintiffs cite to in order to support this allegation is an excerpt from some type of filing from an unknown case before an unknown court in an unrelated matter that shows two footnotes. One footnote reads "Plaintiff's undersigned trial counsel resides in Hillsborough County as of September 2022, and the law firm recently opened an office in this District." ECF No. 1-1 at 141.

[6] "The ex parte application requests the means for service to the alleged defendant victims be made via email through the email associated with the seller ID's which the RICO firms disable so that no notification can be received link to email through the seller ID . . . ." ECF No. 1 at 43-44. Plaintiffs go on to claim that Judge Hernandez-Covington's decisions regarding the TRO and alternative service were made "to unlawfully act in aid and furtherance of the RICO for personal favor to her close personal friend and defendant Ain Jeem, Inc.'s co-lead counsel Alejandro Fernandez . . . ." ECF No. 1 at 44. This, according to Plaintiffs, was a "willful violation of the U.S. Constitution and Article III on the Congressional limits of the injunctive power of the Courts[.]" ECF No. 1 at 45.

un-freeze the party's accounts.[7] ECF No. 1 at 61. Plaintiffs complain that it is difficult to find representation for lawsuits brought by the RICO operation because not only must sellers find a defense attorney licensed to practice where the suit is filed, but many of those defense attorneys are part of the RICO scheme.[8] ECF No. 1 at 54, 61-62.

Plaintiffs allege that defense attorneys were complicit in the conspiracy by either settling the claims or filing to dismiss their client. ECF No. 1 at 61. One route leads Ain Jeem, Inc. to collect more money. ECF No. 1 at 61. The other route prevents other defendant-sellers from being able to appeal the court's orders because the defense attorneys allegedly only file to dismiss based on a lack of personal jurisdiction. ECF No. 1 at 61-62. Yet, according to Plaintiffs, there are grounds to seek dismissal such as improper service, the "shotgun" complaint, or improper joinder.[9] ECF No. 1 at 62. While some of the sellers are dismissed with prejudice, others are dismissed without prejudice. ECF No. 1 at 61. Regardless, because these decisions are not final as to all defendants, they are non-appealable orders. ECF No. 1 at 61. This allows the court to evade appellate review.[10] ECF No. 1 at 61-62.

---

[7] Eventually, summons does get issued and "upon receipt, for the few . . . victims that actually receive it, the . . . victims can call at which point the RICO firm makes a settlement demand for an exorbitant amount in order to release the alleged defendant victim stores by lifting the TRO." ECF No. 1 at 61. Plaintiffs also allege that the RICO operation is able to "obtain continuances of the ex parte seizure orders to keep the . . . victim[s'] finances frozen and stores taken down and held hostage for repeated attempts of extortion from the store owners   . . . ." ECF No. 1 at 61. Plaintiffs also complain that their business records were unlawfully obtained, as well as personal records "not related to their stores . . . ." ECF No. 1 at 43.

[8] Plaintiffs also complain that these defense attorneys "demand[] some form of payment up front." ECF No. 1 at 53.

[9] The defense attorneys licensed in the "state where the RICO cases are pending . . . are complicit in the RICO operation and therefore never file a motion to dismiss for misjoinder, or dismissal for a shotgun complaint, that would impede the future success of the repeated operation, but merely file a motion to dismiss their [client] for lack of personal jurisdiction." ECF No. 1 at 62.

[10] Those alleged victims that are dismissed are "dismissed without prejudice in order to bar the remaining defendants from ever exercising their right to seek appellate relief . . . ." ECF No. 1 at 61. And "[a]s per their agreement with the RICO firms," the defense attorneys "immediately agree to file a voluntary dismissal without

According to Plaintiffs', Etsy, Inc. is complicit in the scheme by "remain[ing] silent" and "fail[ing] to abide by its own policy regarding 'Counter Notice Requirements' . . . ." ECF No. 1 at 46. Instead, Etsy, Inc. "does not send any email or notification of the [takedown] it enacts on behalf of the RICO firms in order assist the furtherance of the RICO operations success by ensuring that the alleged victim[s] . . . do not receive any manner of service including notice required by its own policies or through the email message link that was rendered [in]operable as a result of the takedown." ECF No. 1 at 46. With regard to the NBA, Plaintiffs state they attempted to contact the NBA in order to notify the entity "that a [resellable] collectible" that Plaintiffs "purchased clearly displaying the NBA trademark logo[] was being claimed as counterfeit of the Kareem Abdul[-]Jabbar trademark . . . ." ECF No. 1 at 58. However, "there was no response or reply from the NBA, as the NBA is complicit in the RICO operation." ECF No. 1 at 58.

In sum, Plaintiffs state that the entire conspiracy is enacted because it is "lucrative for all." ECF No. 1 at 62. Plaintiffs allege that "[t]he [g]oal of the unlawful RICO operation is to extort from others engaged in lawful interstate commerce and gain unjust enrichment for the operation and the RICO clients without standing to sue." ECF No. 1 at 18. A secondary goal appears to be "to effect through an abuse of the judicial process, access of, control of, and misappropriation of the [Plaintiffs'] complete business records and trade secrets committing economic espionage, in order to determine the amount of money they can demand (extort) from the victims while holding their online business hostage . . . ." ECF No. 1 at 48.

## II. LEGAL STANDARD

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted

---

prejudice, barring the remaining unrepresented defendants from their right to seek appellate relief, only as to their defendant." ECF No. 1 at 62.

by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Federal courts are courts of limited jurisdiction, as outlined in the United States Constitution. U.S. CONST. ART. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Litigants must establish that the court has subject matter jurisdiction over their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331–1332; 28 U.S.C. § 1367. "[A] district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). The authority to dismiss such a complaint "stems from the bedrock principle that '[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Lynch v.*

8

*Tennessee*, 2017 U.S. Dist. LEXIS 213765, at *8 (M.D. Tenn. Sept. 25, 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Of course, "dismissal on these grounds is appropriate 'only in the rarest of circumstances where . . . the complaint is deemed totally implausible.'" *Lynch*, 2017 U.S. Dist. LEXIS 213765, at *9 (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). This standard requires that "[t]he claims . . . be 'flimsier than doubtful or questionable—they must be essentially fictitious.'" *Id*. at *9 (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)).

When a court dismisses a complaint under Rule 12(b)(1), the same opportunity to amend need not be provided as when a complaint is dismissed under Rule 12(b)(6). *Id*. at *10 (citing *Apple*, 183 F.3d at 479 ("*Tingler*'s requirement that a plaintiff be given the opportunity to amend does not apply to sua sponte dismissals for lack of jurisdiction pursuant to *Hagans*.")). Federal Rule of Civil Procedure 15 states that a:

> party may amend its pleading once as a matter of course within:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1).

Notably, this rule "indicates that as soon as any responsive pleading or motion to dismiss is filed, the clock to amend a complaint as a matter of right begins to run." *Evans v. City of Ann Arbor*, No. 21-10575, 2021 U.S. Dist. LEXIS 130882, at *4 (E.D. Mich. July 14, 2021). The rule also does not "distinguish between responsive pleadings and motions to dismiss filed by different parties." *Evans*, No. 21-10575, 2021 U.S. Dist. LEXIS 130882, at *4. Finally, "[t]he advisory

committee made clear that there 'is no new 21-day period,' and parties cannot add together, or make 'cumulative,' twenty-one-day periods after opposing parties file separate responsive pleadings or motions to dismiss at different times." *Id.* at \*6-7 (quoting Fed. R. Civ. P. 15 Advisory Committee Note (2009)).

Rule 15 provides that leave to amend should be "freely give[n] . . . when justice so requires . . . ." FED. R. CIV. P. 15(a)(2). However, the Rule does *not* require leave must *always* be given. When an amendment "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or *would be futile*" it is well within the Court's discretion to deny such an amendment. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### III. ANALYSIS

The Court has diligently read Plaintiffs' filings and can only conclude that there is no subject matter jurisdiction over this case. Plaintiffs have attempted to convince the Court that there is an emergency in the proverbial theater by repeatedly yelling "fire!" at the top of their lungs. However, there is no flame, smoke, match, or tinder to be found.

Plaintiffs attempt to link together corporate entities, legal entities, and the judiciary in a fantastical narrative that puts Plaintiffs—and other online sellers—at the center of a money-grabbing scheme at the behest of a former NBA athlete.[11] Plaintiffs use the term "RICO" as a prefix to almost every character in their narrative. They employ adjectives like "corrupt" to

---

[11] This, of course, is ignoring Plaintiffs' attempts to link in other trademark holders from China or Russia.

describe members of the bench and bar in Florida. They ascribe terms such as "ex parte" to communications that took place via motions on the record in the Florida litigation. They call reports and orders "fraudulent." The entirety of Plaintiffs' argument is made not in the substance of the facts alleged, but in the adjectives used.

Stripping Plaintiffs' Complaint of these literary mechanisms, the Court is left with nothing more than a description of how Plaintiffs became involved in trademark litigation. Plaintiffs, among others, were sued by Ain Jeem, Inc. over the Kareem Abdul-Jabbar marks. Having filed in the improper court, Ain Jeem, Inc.—utilizing the *proper* procedure of voluntary dismissal— re-filed its case in the correct court. Then, utilizing the *proper* motions practice, Ain Jeem, Inc. was able to obtain a temporary restraining order. Once the defendants to that action received notice of the lawsuit, they obtained counsel.[12] That counsel then sought dismissal of their client, or settled, based on appropriate legal grounds.

Plaintiffs ask the Court to accept their narrative that these very normative practices amount to widespread, conspiratorial behavior. The undersigned finds it to be a work of fiction. Plaintiffs have managed to take simple settlement negotiations and turn them into an entire district's bar being in cahoots with one another. They have taken orders from the bench and instead imagined back-door dealings behind chambers. Plaintiffs have even taken the *non-responses* from one corporate entity and one association and spun them into sinister motives.

---

[12] Much of what Plaintiffs ask this Court to do is essentially adjudicate whether procedural and substantive decisions made by the Middle District of Florida—decisions such as whether to issue a temporary restraining order or allow alternative methods of service for a substantial number of litigants—were proper or improper. More directly, Plaintiffs ask this Court to accept their narrative that not only were these decisions improper, they were made to further the purpose of a conspiracy to put money in the hands of Kareem Abdul-Jabbar. This Court simply is not the proper place to litigate the validity of such decisions. It is the federal "courts of appeals" that "have jurisdiction of appeals from all final decisions of the district courts of the United States," not a District Court in another federal district. 28 U.S.C. § 1291; *see also, Hearn v. United States*, No. 05-cv-285, 2005 U.S. Dist. LEXIS 19987, at *1 (D.D.C. Aug. 2, 2005) ("This Court cannot review decisions rendered by another district court.").

Some Defendants have filed Motions to Dismiss based (in part) on a Rule 12(b)(6) plausibility analysis. ECF Nos. 10, 16, 26, 41, 74, 75, 80, 85, 106. Before the Court can embark on a Rule 12(b)(6) analysis, the Court must first have subject matter jurisdiction to do so. *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted . . . must be decided after and not before the court has assumed jurisdiction over the controversy."). Instead, the undersigned recommends a finding that there is no subject matter jurisdiction under the standard announced in *Apple v. Glenn* and *Lynch v. Tennessee*. The facts presented by Plaintiffs describe civil litigation. What Plaintiffs do with those facts in an effort to establish a civil conspiracy among the NBA, Etsy, Inc., Kareem Abdul-Jabbar, Ain Jeem, Inc., the federal bench in Florida's Middle District, and the associated bar of federal litigators is "totally implausible" and "essentially fictitious." *Apple*, 183 F.3d at 479; *Lynch*, 2017 U.S. Dist. LEXIS 213765, at *9.

Regarding Plaintiffs' Motion to Amend their Complaint, and their subsequent filing of an Amended Complaint without leave of Court to do so, the Court should decline to allow Plaintiffs' leave to Amend. First, Plaintiffs failed to file the purported Amended Complaint within the twenty-one day window in order to qualify as an amendment as a matter of right.[13] Second, because the Court should dismiss this Complaint for lack of subject matter jurisdiction under *Apple* and *Lynch*, the same leniency courts normally provide in allowing amendments does not apply.

Finally, having read the proposed Amended Complaint, the undersigned finds that an amendment would be futile. Notably, the amendment seeks to *expand* the circle of Defendants

---

[13]  The first Motion to Dismiss was filed on August 17, 2023. ECF No. 16. The twenty-one-day window for Plaintiffs to file an amended complaint as a matter of right expired on September 7, 2023. Plaintiffs did not file their Amended Complaint until December 4, 2023. ECF No. 76.

involved in this fictitious conspiracy to include PayPal Holdings, Inc., a law clerk with Brickell, and other entities/attorneys not named in the original Complaint. ECF No. 76 at 8-16. Additionally, within the 299-page filing, there are no new facts or series of assertions that lead the Court to a different conclusion than the one reached above. The facts outlined by Plaintiffs in the unauthorized Amended Complaint are no more possible or realistic than those in the original Complaint. Both are works of imagination. Were the Court to allow such an Amendment, it would yield the same result: a recommendation to dismiss for lack of subject matter jurisdiction.

The undersigned notes that Defendants in this case have filed numerous Motions to Dismiss that argue for dismissal based on Plaintiffs' failure to state a plausible claim, improper venue, and lack of personal jurisdiction. ECF Nos. 10, 16, 26, 41, 71, 74, 75, 80, 85, 89, 106, 115. Several Defendants have filed Motions to Strike Plaintiffs' Amended Complaint. ECF Nos. 88, 91, 106. Plaintiffs have responded in opposition to those Motions. ECF Nos. 15, 18, 19, 28, 50, 72, 86, 81, 84, 94, 102, 104, 105, 109. However, the undersigned finds that the lack of subject matter over this case per the *Apple* standard, generally, outweighs the need for substantive analysis of those Motions at this time.

There are a number of other Motions pending before the Court aside from the Motions to Dismiss and Motions to Strike. Plaintiffs again seek appointment of counsel. ECF No. 87. They also sought leave of Court to exceed page limitations, filed a Motion for Clarification regarding a waiver of service, and most recently filed a Motion for an Extension of Time to Serve process. ECF Nos. 95, 97, 107. Because the undersigned RECOMMENDS DISMISSING this case sua sponte for lack of subject matter jurisdiction, the undersigned also RECOMMENDS DENYING all other pending Motions as MOOT.

13

## IV. CONCLUSION

Because Plaintiffs Complaint is essentially a work of fiction, wholly unsubstantiated, and attempts to turn the normal civil litigation process into a widespread conspiracy betwixt the judiciary, the bar, the National Basketball Association, Etsy, Inc., Kareem Abdul-Jabbar and his corporate identities, and others, the undersigned RECOMMENDS DISMISSING Plaintiffs' Complaint in its entirety sua sponte for lack of subject matter jurisdiction pursuant to *Apple* and *Lynch*.

RESPECTFULLY SUBMITTED this 24th day of January, 2024.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A FORFEITURE AND/OR WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**