IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CARL PUCKETT and<br>MARCELLA PUCKETT,<br><br>    Plaintiffs,<br><br>v.<br><br>AIN JEEM, INC., *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Case No. 1:23-cv-1143-STA-jay<br>)<br>)<br>)<br>) |

### ORDER ADOPTING REPORT AND RECOMMENDATION
### ORDER OF *SUA SPONTE* DISMISSAL
### ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
### ORDER ON APPELLATE FILING FEE

Before the Court is the United States Magistrate Judge's report and recommendation (ECF No. 120) filed January 24, 2024. Plaintiffs Carl Puckett and Marcella Puckett, who are acting *pro se*, have submitted timely objections to the report and recommendation.[1] Several Defendants have submitted briefs addressed to Plaintiffs' objections and the Magistrate Judge's recommendation to dismiss. *See* ECF Nos. 128, 129, 130, 135, 136.[2] Plaintiffs have filed a request for leave (ECF No. 132) to file a reply brief. Because the Court finds a reply brief would not assist the Court in

---

[1] Defendant Axencis, Inc. has filed a contingent objection to the report and recommendation, in which Axencis argues dismissal of the pending Rule 12(b) motions as moot would not be proper in the event the Court does not adopt the Magistrate Judge's recommendation to dismiss the case in its entirety. Because the Court is adopting the Magistrate Judge's recommendation, the Court need not reach Axencis' contingent objection to the report and recommendation.

[2] Defendants Etsy, Inc. and Stephen Milbrath filed motions for an extension of time (ECF Nos. 131, 133) to submit their responses to Plaintiffs' objections. The motions are **GRANTED**.

1

deciding Plaintiffs' objections and in evaluating the report and recommendation, the request to file a reply is **DENIED**. For the reasons set forth below, the Court hereby **ADOPTS** the report and recommendation and **DISMISSES** this action without prejudice for lack of subject-matter jurisdiction.

## BACKGROUND

Plaintiffs filed their Complaint for Damages and Injunctive Relief for Violations of the Federal Racketeer Influenced and Crime[3] Organizations Act (ECF No. 1) on July 21, 2023. Plaintiffs paid the filing fee and caused summons to issue as to the 19 Defendants named in the Complaint: Kareem Abdul Jabbar; the National Basketball Association; Ain Jeem, Inc.; Etsy, Inc.; Axencis, Inc.; Iconony; the Hon. Virginia Hernandez-Covington, United States District Judge for the Middle District of Florida; the Hon. Anthony E. Porcelli, United States Magistrate Judge for the Middle District of Florida; the Brickell IP Group, PLLC, a law firm with offices in the state of Florida; Jocelyn Brown; Alejandro J. Fernandez; Nicole Fondura; Richard Guerra; Jessica Kramer; Andrew Lockton; Geoffrey Lottenberg; Stephen Milbrath; Deborah Morales; Rafael-Perez Paniero; Chris Stavro; and Arthur Robert Weaver.

Pursuant to Administrative Order 2013-05, which governs civil actions filed by parties acting *pro se*, the Court referred the case to the United States Magistrate Judge for the management of all pretrial matters. Pending before the Court are a series of Rule 12(b) motions to dismiss filed by Defendants as well as Plaintiffs' motions for various forms of relief. The Magistrate Judge has recommended that in lieu of deciding each of these requests, the Court dismiss the Complaint *sua sponte* for lack of subject-matter jurisdiction.

---

[3] The federal law is actually known as the Racketeer Influenced and Corrupt Organizations Act.

The Magistrate Judge has construed Plaintiffs' Complaint (172 pages in length) and its appendix (371 pages) to allege certain facts in support of Plaintiffs' RICO claims. The Magistrate Judge's report focused its analysis on the allegations of Plaintiffs' original Complaint. The Magistrate Judge also recommended that the Court deny Plaintiffs leave to amend. Plaintiffs filed a Motion to Amend their pleadings (ECF No. 13) on August 30, 2023; a First Amended Complaint (ECF No. 76) on December 4, 2023; a Corrected First Amended Complaint (ECF No. 77) on December 5, 2023; and a Request for Leave to Amend and File Plaintiffs' Second Amended Complaint (ECF No. 94) on December 22, 2023. The Court addresses Plaintiffs' requests to amend in more depth below. Plaintiffs have not objected to the Magistrate Judge confining his reading of the pleadings to the original Complaint only. Plaintiffs have objected to specific statements in the Magistrate Judge's recitation of the background facts. Based on its de novo review of the report, Plaintiffs' Complaint, and the entire record of the case, the Court finds no error in the report and therefore adopts its factual background section as the findings of the Court.

The Complaint alleges a "Racketeer[] Influenced Crime Organization has taken over the judicial system in the area of [intellectual property] and trademark law." Compl. ¶ 28 (ECF No. 1). According to Plaintiffs, the members of the conspiracy include former professional basketball player Kareem Abdul-Jabbar, the National Basketball Association ("NBA"), two federal judges, ten attorneys, several law firms, Ain Jeem, Inc. (and several of its employees), Etsy, Inc., and other corporate entities. *Id*. ¶¶ 6-25. Plaintiffs' Complaint makes many allegations about how the RICO enterprise has brought legal action against Plaintiff Carl Puckett and similarly situated individuals in other Districts. *See id*. ¶ 145 ("The RICO [enterprise] files the same pleadings and repeatedly enacts their operation in Federal District [C]ourt jurisdictions where their operations are successful."). For example, the Complaint contains ten pages of allegations about Defendant

3

Brickell IP Group's legal representation of foreign companies in Judicial Districts other than the Western District of Tennessee. *Id*. ¶¶ 30-41. The gist of this background information is that the Brickell IP Group and its lawyers (along with other firms and attorneys who are not parties to this action) engage in a pattern of trademark litigation in federal courts in furtherance of a RICO enterprise. Plaintiffs also allege that the RICO enterprise sues foreign companies in U.S. District Courts, even though the foreign companies do no business in the United States and ship no trademarked merchandise in U.S. commerce. *Id*. ¶¶ 35, 41. Plaintiffs allege that the parties represented by the Brickell IP Group (and other firms and attorneys not named as parties here) lack standing to bring the suits under American law. *Id*. ¶ 40. Rather than review all of Plaintiffs' allegations concerning the RICO enterprise's activities in other cases against persons who are not parties to this action, the Court will focus on the particular allegations Plaintiffs make against the Defendants named in the Complaint and how Defendants have allegedly harmed Plaintiffs.

Plaintiffs owned and operated an online Etsy store known as Devildogstreasure. Compl. ¶¶ 147-49. As part of their online sales, Plaintiffs acquired collectible sports plates and then attempted to resell them on Etsy. *Id*. ¶ 150. One of the plates "was a 1989 manufactured NBA trademarked collectible plate displaying an artistic image of Kareem Abdul[-]Jabbar and identifying the artist['s] name along with the NBA trademark logo on the back . . . ." *Id*. ¶ 151. Defendant Ain Jeem, Inc. holds trademark rights related to Abdul-Jabbar. According to Plaintiffs, Ain Jeem and Abdul-Jabbar file trademark suits against individual online sellers like Mr. Puckett for financial gain and as part of a pattern of litigious behavior in furtherance of the wider RICO enterprise. *Id*. ¶¶ 153-57. Brickell IP Group, PLLC, a law firm in Florida, represents Ain Jeem, Abdul-Jabbar, and his manager Defendant Deborah Morales. *Id*. ¶ 159. Defendants Richard Guerra, Arthur Robert Weaver, Rafael-Perez Pineiro, Nicole Fondura, and Alejandro Fernandez

4

are all attorneys associated with Brickell IP Group. *Id*. Defendants Abdul-Jabbar and Morales also retained Axencis to conduct online investigations for possible trademark infringements. *Id*. ¶¶ 161-62. Using screenshots of items listed for sale, Axencis identifies sellers offering items that allegedly infringe Ain Jeem and Abdul-Jabbar's mark, all the while knowing that all but one of the "trademarks had been dead, canceled or abandoned" according to the United States Patent and Trademark Office. *Id*. ¶¶ 158-59.

Ain Jeem, Inc. through its counsel at Brickell IP Group filed suit (presumably for trademark violations) in the United States District Court for the Southern District of Florida and named 77 different online sellers as defendants, including Plaintiff Carl Puckett. *Id*. ¶ 165. According to Plaintiffs, Ain Jeem, Inc.'s pleading in the case (just as in other cases filed by the RICO enterprise) was a "shotgun" complaint, a form of pleading not permitted under Eleventh Circuit precedent. *Id*. ¶¶ 76-80. When Ain Jeem sought injunctive relief from the Southern District of Florida, the court denied its request for reasons that are not explained in the Complaint. Ain Jeem then voluntarily dismissed the case. *Id*. ¶ 166-70. Plaintiffs allege this "judicial roadblock" thwarted the RICO enterprise's pattern of "abuse of judicial process" against alleged trademark infringers. *Id*. ¶ 167.

Ain Jeem then sought out a more RICO-friendly jurisdiction to re-file the suit and brought the next action in the United States District Court for the Middle District of Florida. *Id*. ¶ 170-71. Plaintiffs allege that Defendant Richard Guerra of the Brickell IP Group chose to re-file the case in the Middle District of Florida where his close personal friend Defendant Alejandro Fernandez practiced law. *Id*. ¶ 170. Defendant Fernandez then used his influence with United States District Judge Virginia Hernandez-Covington who was the presiding judge in the re-filed civil case to

obtain relief against Carl Puckett and others.  *Id*.[4]  Plaintiffs go on to allege that "[b]ecause of the personal favors through friendships and now associations in aiding and abetting [the] RICO firm operation to proceed in the Florida Middle District Court, the RICO began filing repeated actions on behalf of its client . . . ."  *Id*. ¶174.

The Complaint alleges that Ain Jeem was able to obtain a TRO from District Judge Hernandez-Covington that froze the accounts of the online sellers named as defendants as well as the funds associated with their accounts.  *Id*. ¶ 100; *see also id*. ¶¶ 86-88.  The motion for a TRO was heard, according to Plaintiffs, "ex parte" because none of the defendants had yet been served.  *Id*.  District Judge Hernandez-Covington also allegedly approved an alternate form of service that denied defendants the ability to properly receive notice of the suit.  *Id*. ¶¶ 101-103.  Plaintiffs allege the Defendants requested *ex parte* that online sellers like Mr. Puckett only receive notice of the action by email sent through the seller's platform (in Mr. Puckett's case, Etsy) even though the platform disabled the seller's email communication.  *Id.* ¶ 102.  The Complaint alleges that District Judge Hernandez-Covington granted Ain Jeem TRO relief and its request for alternative service "to unlawfully act in aid and furtherance of the RICO for personal favor to her close personal friend and defendant Ain Jeem, Inc.'s co-lead counsel Alejandro Fernandez . . . ."  *Id*. ¶ 103.  Ain Jeem filed suit in the Middle District of Florida on June 1, 2021, and by mid-June 2021, Plaintiffs

---

[4] Plaintiffs also allege that "[w]hen [t]he RICO does locate a corruptible judge willing to aid in the furtherance of the unlawful operations interfering with those engaged in interstate commerce, they open new offices in that district in furtherance of their operation . . . ." ECF No. 1 at 53.  Plaintiffs cite to an exhibit in support this allegation an excerpt from some type of filing from an unknown case before an unknown court in an unrelated matter that shows two footnotes.  One footnote reads "Plaintiff's undersigned trial counsel resides in Hillsborough County as of September 2022, and the law firm recently opened an office in this District." ECF No. 1-1 at 141.

discovered their "online store was removed . . . from the internet merchant [p]latform" Etsy, Inc., which "included a freeze of any income waiting to be deposited by Etsy, Inc. . . . ." *Id.* ¶ 175.

Plaintiffs allege that once Ain Jeem obtained the TRO freezing Plaintiffs' Etsy account, Ain Jeem then attempted to extort money from the online sellers by demanding an exorbitant sum to un-freeze the party's accounts. *Id.* ¶ 138.[5] Plaintiffs complain that it is difficult to find representation for lawsuits brought by the RICO enterprise because not only must sellers find a defense attorney licensed to practice where the suit is filed, but many of those defense attorneys are part of the RICO scheme.[6] *Id.* ¶ 140. Plaintiffs allege that defense attorneys were complicit in the conspiracy by either settling the claims or filing to dismiss their client only for lack of personal jurisdiction. *Id.* ¶ 141. In Plaintiffs' view, online sellers like Mr. Puckett have colorable arguments for the dismissal of the trademarks suits like the one filed by Ain Jeem, for example, dismissal for improper service, improper "shotgun" pleading, or improper joinder. *Id.* ¶ 140. But because suits like Ain Jeem's in the Middle District of Florida involve large numbers of online sellers as parties, defendants with arguments for dismissal must wait for the case to be decided as to all defendants before filing an appeal, which allows the District Court to effectively evade appellate review. *Id.* ¶ 141.

---

[5] Eventually, summons does get issued and "upon receipt, for the few . . . victims that actually receive it, the . . . victims can call at which point the RICO firm makes a settlement demand for an exorbitant amount in order to release the alleged defendant victim stores by lifting the TRO." ECF No. 1 at 61. Plaintiffs also allege that the RICO operation is able to "obtain continuances of the ex parte seizure orders to keep the . . . victim[s'] finances frozen and stores taken down and held hostage for repeated attempts of extortion from the store owners . . . ." ECF No. 1 at 61. Plaintiffs also complain that their business records were unlawfully obtained, as well as personal records "not related to their stores . . . ." ECF No. 1 at 43.

[6] Plaintiffs also complain that these defense attorneys "demand[] some form of payment up front." ECF No. 1 at 53.

The Complaint goes on to allege that Etsy, Inc. is complicit in the scheme by "remain[ing] silent" and "fail[ing] to abide by its own policy regarding 'Counter Notice Requirements' . . . ." *Id.* ¶ 109. Instead, Etsy "does not send any email or notification of the [takedown] it enacts on behalf of the RICO firms in order assist the furtherance of the RICO operations success by ensuring that the alleged victim[s] . . . do not receive any manner of service including notice required by its own policies or through the email message link that was rendered [in]operable as a result of the takedown." *Id.* As for the NBA, Plaintiffs notified the NBA about Ain Jeem's claim that the plate bearing the NBA logo was allegedly counterfeit. *Id.* ¶ 129. When Plaintiffs received no response from the NBA, Plaintiffs concluded "the NBA is complicit in the RICO operation." *Id.*

In sum, Plaintiffs allege that "[t]he [g]oal of the unlawful RICO operation is to extort from others engaged in lawful interstate commerce and gain unjust enrichment for the operation and the RICO clients without standing to sue." *Id.* ¶ 38. A secondary goal appears to be "to effect through an abuse of the judicial process, access of, control of, and misappropriation of the [Plaintiffs'] complete business records and trade secrets committing economic espionage, in order to determine the amount of money they can demand (extort) from the victims while holding their online business hostage . . . ." *Id.* ¶ 39. The Complaint does not allege what constitutes a business record or trade secret, which party improperly obtained the information, or how obtaining the information violated RICO.

Plaintiffs have raised a number of objections in 41 separately numbered paragraphs to the Magistrate Judge's report concerning the Magistrate Judge's construction of their Complaint. The Court finds that the vast majority of Plaintiffs' objections are simply amplifications or quibbles over the terms used by the Magistrate Judge to summarize the pleadings. For instance, where the Magistrate Judge refers to Etsy as a "platform," Plaintiffs respond that Etsy is a "marketplace," a

8

supposed distinction because Etsy engages in payment processing. Plaintiffs ignore the fact that their Complaint uses the term "platform." Plaintiffs also object to the report's references to Abdul-Jabbar's trademarks, answering that Abdul-Jabbar holds a valid trademark only for t-shirts and socks and no other form of merchandise. In context, the Magistrate Judge's statements draw no conclusions about the actual validity of any trademark, only that Ain Jeem brought its case to enforce what the company claimed to be a valid trademark. The Court finds that Plaintiffs have not actually shown why the Magistrate Judge's reading of the Complaint was incorrect or incomplete. Plaintiffs have simply used their objections as an opportunity to highlight the gravamen of their RICO theory and defend the truth of their claims. Therefore, Plaintiffs' objections to the report's "factual background" section are overruled.

## STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869-70 (1989)); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). The United States District Court for the Western District of Tennessee adopted Administrative Order 2013-05 for this very purpose, referring all cases filed by non-prisoner plaintiffs acting *pro se* to a United States Magistrate Judge for management of all pretrial matters. Here, the Magistrate Judge has recommended that the Court dismiss Plaintiffs' Complaint *sua sponte* for lack of subject-matter jurisdiction.

"Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). A district court may, however, *sua sponte* dismiss a

9

complaint for lack of subject-matter jurisdiction "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* The plaintiff is not entitled to an opportunity to amend his complaint in that situation. *Id.* But "[w]hen a district court is faced with a complaint that appears to be frivolous or unsubstantial in nature, dismissal under Rule 12(b)(1) (as opposed to Rule 12(b)(6)) is appropriate in only the rarest of circumstances," such as "where . . . the complaint is deemed totally implausible." *Id.* at 480. If the plaintiff's complaint is not "totally implausible," then he is entitled to notice and an opportunity to amend. *Id. Sua sponte* dismissals are "reserved only for patently frivolous complaints, which present no Article III case because there is 'no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Zareck v. Corr. Corp. of Am.*, 809 F. App'x 303, 305 (6th Cir. 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)) (brackets omitted).

Plaintiffs object to the precedential value of *Apple* and argue that the case was "reversed and remanded on appeal." Pl.'s Objs. to Rep. & Recommendation 27 (ECF No. 124). Plaintiffs' argument is incorrect. The Sixth Circuit in *Apple* held that the district court had erred by dismissing the case for failure to state a claim under Rule 12(b)(6) but affirmed the dismissal of the case for lack of subject-matter jurisdiction due to the implausible nature of the allegations. *Apple*, 183 F.3d at 480 ("For all of the reasons stated above, we **AFFIRM** the district court's dismissal on the ground that the district court lacked subject matter jurisdiction to entertain Apple's complaint."). The Court finds no error in the Magistrate Judge's reliance on *Apple*.

The Magistrate Judge made his recommendation that the Court dismiss the case *sua sponte* for lack of subject-matter jurisdiction as part of a report and recommendation issued pursuant to 28 U.S.C. § 636. Section 636 authorizes the Magistrate to issue a report and recommendation on any dispositive matter like the dismissal of a suit for lack of subject-matter jurisdiction. 28 U.S.C.

10

§ 636(b)(1)(B). Any party to the action then has 14 days to raise objections to the Magistrate Judge's recommended disposition. The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. *Id.* The Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Rather the Court may adopt any findings and rulings of the magistrate judge to which no specific objection is filed. *Id.* at 151.

## **ANALYSIS**

The Court hereby **ADOPTS** the Magistrate Judge's recommendation and holds that Plaintiffs' claims are so totally implausible and frivolous the Court lacks subject-matter jurisdiction to reach the merits of Plaintiff's claims. Plaintiffs allege that a cabal of intellectual property lawyers, a former professional basketball player and his business associates, and other accomplices hatched a conspiracy to extort money from individuals like Plaintiffs who offer collectibles for sale online. Plaintiffs believe Defendants' activities violate RICO. RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Plaintiffs allege an injury to their business or property, Etsy's decision to freeze Plaintiffs' online store. What Plaintiffs have not alleged is any predicate act that would constitute racketeering. Section 1962 of the United States Criminal Code defines a criminal RICO offense and makes it a crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

11

pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO defines "racketeering activity" to include specific forms of fraud like wire fraud, bribery, counterfeiting, drug trafficking, and several other criminal acts listed in the statute. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is the commission of at least two acts of "racketeering activity." §1961(5).

Nothing in the Complaint suggests any RICO violation, much less a pattern of racketeering activity. Plaintiffs complain that the alleged conspirators brought legal action in the Middle District of Florida against Mr. Puckett who resides in Tennessee over merchandise listed for sale by Mr. Puckett on Etsy and which supposedly infringed a trademark owned by Abdul-Jabbar and his company. Plaintiffs cite a host of problems as they see them with the Florida suit, from pleading defects to more fundamental due process violations. Plaintiffs even question whether Abdul-Jabbar had an enforceable trademark. Whatever the merits of these arguments (the Court does not reach them) and whatever the outcome of the Florida litigation (the Complaint never actually makes allegations in that regard), Plaintiffs leap to the implausible conclusion that Abdul-Jabbar and his lawyers acted for criminal purposes and only obtained relief due to a wider conspiracy with an unknown or indeterminate number of lawyers and the presiding judge in the Florida case, not to mention the NBA and Etsy.

None of the allegations comes close to alleging an actual RICO violation. As for Abdul-Jabbar, his business, and his representatives, Plaintiffs have only described what typically occurs in federal civil litigation. Kareem Abdul-Jabbar took legal action against Mr. Puckett in Florida to litigate a trademark dispute. The only allegation against the NBA is that it never responded to inquiries Mr. Puckett made concerning the NBA trademark stamped on the collectible plate, which allegedly infringed on the Abdul-Jabbar trademark. And the Complaint's only allegation against

12

Etsy was its decision to comply with a TRO granted in the Florida litigation to halt Mr. Puckett's online sales. Plaintiffs have alleged no facts, plausible or otherwise, to prove the existence of a conspiracy or an agreement among the defendants to carry out an illegal enterprise.

Plaintiffs' allegation that two federal judicial officers took part in the supposed RICO conspiracy is even more untenable. Judges have absolute judicial immunity from suits against them arising out of their performance of judicial functions, "even when the judge is accused of acting maliciously or corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966, at *1–2 (6th Cir. Aug. 2, 2022) (affirming the dismissal *sua sponte* of a claim against a judge as frivolous and implausible). Plaintiffs only allege that District Judge Hernandez-Covington ruled in favor of Abdul-Jabbar in the Middle District of Florida case and that she did so out of some loyalty to the lawyers representing Abdul-Jabbar. Plaintiffs make few if any actual allegations against Magistrate Judge Porcelli. Even so, the Complaint speaks only of the judges' roles as decisionmakers in the trademark action against Mr. Puckett, nothing more. Both judges have absolute immunity from such claims.

The totally implausible narrative spun by Plaintiffs exemplifies the kind of "patently frivolous complaints, which present no Article III case because there is no room for the inference that the questions sought to be raised can be the subject of controversy." *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (quoting *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933)) (cleaned up). Therefore, the Court **DISMISSES** Plaintiff's Complaint *sua sponte* for lack of subject-matter jurisdiction.

The Magistrate Judge has further recommended that the Court deny Plaintiffs an opportunity to amend their pleadings. Plaintiffs have actually made a request to amend and also filed amended pleadings without leave of court. Rule 15(a) grants a pleading party one chance to

amend a pleading as a matter of right but only after certain triggering events and within very short timelines. Plaintiffs arguably filed their First Amended Complaint after their opportunity to amend as a matter of right had expired under Rule 15(a). While the Court of Appeals has not ruled on the question, other district courts in this Circuit have held that in multi-defendant cases like this one, a party's opportunity to amend its pleadings as a matter of right under Rule 15(a) begins to run as soon as any defendant files either "a responsive pleading or a motion [to dismiss] . . . whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B); *see Evans v. City of Ann Arbor*, No. 21-10575, 2021 WL 2949502, at *2 (E.D. Mich. July 14, 2021) (collecting cases); *Jones v. Pro. Acct. Servs., Inc.*, Case No. 16-00013, 2016 WL 6242927, at *2 (E.D. Tenn. Oct. 6, 2016); (quotations removed) ("The earliest served responsive pleading or motion begins the twenty-one day period."); *Bormuth v. City of Jackson*, Case No. 12-11235, 2012 WL 2184574, at *2 (E.D. Mich. June 14, 2012); *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, Case No. 11-451, 2011 WL 6751459, at *2 (S.D. Ohio Dec. 22, 2011). In this case, that would have been 21 days from August 17, 2023, when Defendant Stephen Milbrath filed a motion to dismiss (ECF No. 10) addressed to the original Complaint. Plaintiffs did not file their First Amended Complaint (ECF No. 76) until December 4, 2023. Because the Court is dismissing Plaintiffs' original Complaint due to the frivolous and implausible nature of its allegations, the Court need not decide whether Plaintiffs properly filed their First Amended Complaint. Because the Court holds that the Complaint is wholly implausible, the Court also holds that Plaintiffs have no entitlement to an opportunity to amend. *Apple*, 183 F.3d at 479.

The report and recommendation did not include a recommendation about whether the Court should dismiss Plaintiffs' suit with prejudice or without. The Magistrate Judge did recommend that the Court dismiss the other motions pending in the case as moot. "Jurisdiction is the power to

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). When a court dismisses a case for lack of subject-matter jurisdiction for the frivolous and totally implausible nature of the allegations, the dismissal is without prejudice. *Smith v. Cadle*, No. 21-5370, 2021 WL 7210172, at *3 (6th Cir. Nov. 18, 2021). The Court hereby **DISMISSES** Plaintiffs' Complaint without prejudice.

The next issue to be addressed is whether the Court should authorize Plaintiffs to appeal this decision *in forma pauperis*. Under 28 U.S.C. § 1915(a)(3), an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. "'Good faith' has been defined as a requirement that an appeal present a nonfrivolous question for review." *Cruz v. Hauck*, 404 U.S. 59, 62 (1971) (Douglas, J., concurring). The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to dismiss this case, the frivolous and totally implausible nature of Plaintiffs' claims, also compel the conclusion that an appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiffs would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*.

The United States Court of Appeals for the Sixth Circuit's decisions in *McGore v. Wrigglesworth*, 114 F.3d 601, 612–13 (6th Cir. 1997) and *Floyd v. United States Postal Serv.*, 105 F.3d 274, 276 (6th Cir. 1997) apply to any appeal filed by Plaintiffs in this case. If Plaintiffs file a notice of appeal, they must pay the entire $605 filing fee required by 28 U.S.C. §§ 1913 and 1917. By filing a notice of appeal, Plaintiffs become liable for the full amount of the filing fee, regardless of the subsequent progress of the appeal. The entire filing fee must be paid within thirty

(30) days of the filing of the notice of appeal. If Plaintiffs fail to comply with the above assessment of the appellate filing fee within thirty (30) days[7] of the filing of the notice of appeal or the entry of this order, whichever occurred later, the Court will notify the Sixth Circuit, which will dismiss the appeal. If the appeal is dismissed, it will not be reinstated once the fee is paid. *McGore*, 114 F.3d at 610.

**IT IS SO ORDERED.**

                                              s/ S. Thomas Anderson
                                              S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT JUDGE

                                              Date: March 5, 2024.

---

[7] The district court may extend this deadline one time by thirty (30) days if the motion to extend is filed before the expiration of the original deadline. *McGore*, 114 F.3d at 610.